496 So.2d 204 (1986)
CITY OF JACKSONVILLE, Appellant,
v.
Lowell Kent HORN and Juanita Horn, Appellees.
No. BI-5.
District Court of Appeal of Florida, First District.
October 15, 1986.
*205 Gerald A. Schneider, Gen. Counsel, William Lee Allen, Asst. Gen. Counsel, Jacksonville, for appellant.
*206 Robert M. Foster of Mahoney, Adams, Milam, Surface & Grimsley, P.A., Jacksonville, for appellees.
SMITH, Judge.
The City of Jacksonville appeals a final judgment enjoining the city from exercising any ownership or control over a portion of a plot of land owned by Mr. and Mrs. Horn, appellees, and awarding judgment of $6,925.40 as damages committed by the city when it entered upon the Horns' property and began clearing it for a road right-of-way. The city claims the disputed property as part of a public road, while the Horns maintain the city's claim is barred by the Marketable Record Title Act (MRTA), Chapter 712, Florida Statutes. For the reasons which follow, we affirm.
After the city began clearing and grading the north thirty feet of their property, the Horns filed suit and obtained a temporary injunction against the city. Following a final hearing, the trial court entered a final judgment declaring the Horns' property free and clear of the city's claim to a road right-of-way by operation of the MRTA and awarded damages for destruction of trees, fences, and other damage to the Horns' property.
The parties agree that in 1926 County Road 326, also known as Cox Road (later named Crystal Road), was established by the city's predecessor, Duval County, pursuant to Chapter 4338, Laws of Florida (1895), and sections 1592-1593, Revised General Statutes of Florida (1920). The road right-of-way, sixty feet in width and one-half mile in length, begins at Blair Road, on which the Horns' property abuts, and extends westward for a half mile, the center line coinciding with the north boundary of the Horns' parcel, which is 250 feet in length. Thus, the south half of the road overlaps or encroaches upon the north thirty feet of the Horns' land.
There is no evidence that the city or Duval County, prior to the city's acts complained of in this case, had ever cleared, opened, graded, paved, or done any other work on this road. It is equally clear that the county or city's claim as to the existence of the roadway was never manifested by the recording of any map or document among the public records of the Clerk of the Circuit Court, Duval County; nor was Cox Road, or Crystal Road as it is now referred to, ever shown upon any of the property ownership maps maintained in the office of the Property Appraiser of Duval County.
The Horns obtained title in January 1984, by conveyance from Mr. and Mrs. Touchton, who in turn purchased from Gordon H. and June L. Bartholf. Their chain of title extends back to 1940 when the property was conveyed to a predecessor in title by the Trustees of the Internal Improvement Fund of Florida. Consequently, the Horns claim ownership of a "marketable record title" to the land by virtue of a record title extending well beyond the thirty year period required by the MRTA, section 712.02, Florida Statutes (1985).
The purpose of the MRTA is to simplify and facilitate land title transactions. It eliminates all stale claims to real property, with certain enumerated exceptions, unless notice of these claims is filed in a procedurally proper manner. City of Miami v. St. Joe Paper Company, 364 So.2d 439 (Fla. 1978). More specifically, the Act provides that any person who, along with his predecessors, "... has been vested with any estate in land of record for 30 years or more, shall have a marketable record title to such estate in said land, which shall be free and clear of all claims except the matters set forth as exceptions to marketability in s. 712.03." 712.02, Fla. Stat. (1984).
The city does not challenge the trial court's finding that there was no record or notice of the city's claim sufficient to avert the operation of the MRTA. The city does claim, however, that the trial court was in error in finding that the city failed to prove use of the road, so as to avoid extinguishment, under the provisions set forth in section 712.03(5) of the MRTA, which excepts from operation of the Act:

*207 Recorded or unrecorded easements or rights, interest or servitude in the nature of easements, rights-of-way and terminal facilities, including those of a public utility or of a governmental agency, so long as the same are used and the use of any part thereof shall except from the operation hereof the right to the entire use thereof... .
Before dealing with the application of the law to the facts of this case, we find it necessary to review certain findings of the trial court. As noted by the trial court in his final judgment (by incorporation of findings contained in the order granting temporary injunction), the city relied heavily upon the testimony of Gene O'Steen that he and his father used a portion of Crystal Road in the late 1950's for farming and logging operations. His testimony was supplemented by his tracing, in color, on a map in evidence the route used by them in gaining access to property owned by O'Steen's father abutting upon what would be a part of Crystal Road lying west of the Horns' property. The trial court found this evidence insufficient to establish use.
Similarly, in reviewing the testimony of the Horns' predecessor, Mr. Bartholf, who owned and lived on the Horn property from 1955 to 1978, the trial court stated as the essence of the testimony that "during the entire 23-year period when he owned and lived on the property there was never a road built or maintained on the north strip of his property." These findings by the trial court were made from a superior vantage point since the trial court could hear as well as see the witnesses as they testified, pointed to and made markings upon the numerous maps, surveys and other documents in evidence. We are in no position to second-guess the trial court's interpretation of testimony, and other evidence, and we conclude from our review that his findings are supported by the record.
Because of emphasis on the point by the city, we have closely examined Mr. Bartholf's testimony concerning a lawsuit by the city against him. The city urges that a finding of fact in the final judgment concerning this lawsuit is at odds with the witness's testimony and markings he made on a survey drawing of the property in question. Mr. Bartholf testified that in 1970 the city filed a suit to compel him to remove a part of his fence which blocked access from Blair Road to the right-of-way for Crystal Road, and also encroached upon Blair Road. Upon his removal of the fence, he stated, the city dismissed the action. As to this evidence, the trial court found that the evidence showed the right-of-way encroachment complained of by the city "was an encroachment into the right-of-way of Blair Road, not Cox or Crystal Road." While it is not this court's function to decide factual issues, this finding is obviously incorrect, as both the pleadings from the suit itself and the testimony and exhibits quite clearly show that the fence encroached on both Blair Road and Crystal Road. Appellees appear to be correct, however, in arguing (contrary to the city's contention) that the evidence does not show the removal of any portion of the fence blocking that part of Crystal Road lying within the north thirty feet of the Horns' property (the parcel in dispute). It is clear, however, that Mr. Bartholf did remove at least that part of his fence extending north from the corner of his property across the north half of Crystal Road to a point at which it connected to a neighbor's [Mrs. Williams] fence.
Finally, in summarizing the evidence, the trial court found that "any right of way which the [city] obtained for [Crystal Road] in 1926 over the Northerly 30 feet of [the Horns'] property had not been used for a period of more than 30 years prior to the acquisition of the property by the [Horns]." We find no basis upon which to dispute this finding of fact. It is therefore clear, from the above, that if the city is to prevail it must demonstrate from the record that the trial court overlooked proof of use of a portion of the Crystal Road easement other than that portion now encompassed by the Horns' claim of ownership. This the city has failed to do.
*208 Our resolution of this case has not been without difficulty. While the statute (section 712.03(5)) purports to except from its operation "recorded or unrecorded" easements and rights-of-way, "so long as the same are used," nothing is said concerning what constitutes "use" sufficient to satisfy the exception. Similarly, with respect to the provision that "the use of any part thereof shall except from the operation hereof the right to the entire use thereof," we are left mostly to our own devices in determining how this may apply to a given set of facts. The parties have offered little specific guidance on these issues.
We begin our task of deciphering the statute with the proposition that rights or easements once acquired for the use and benefit of the public are not easily lost or surrendered. The statute should be broadly construed, accordingly, as intended to protect public rights to the extent permissible under our organic law. Interpreting the statute in this manner, it is reasonable to ascribe to the lawmakers the intent to preserve a public easement or right-of-way to its full width, notwithstanding the use of only a part of its width as designated by the conveyance, dedication, or other means by which it was established. See, Dade County v. Harris, 90 So.2d 316 (Fla. 1956) (use of portion of a highway right-of-way as a "grass parkway" not incompatible with dedication and user of the whole for highway purposes); Smith v. City of Melbourne, 211 So.2d 66 (Fla. 4th DCA 1968) (there was a completed dedication of a thirty-foot road right-of-way although the city had not paved the full width of the roadway).
It appears equally clear, and of more significance here, that the words "any part" should reasonably be construed to refer to the length dimension of the claimed right-of-way, as well as its width. See, Waterman v. Smith, 94 So.2d 186 (Fla. 1957) (offer to dedicate two contiguous alleys was wholly accepted by city's action in paving one of them); Indian Rocks Beach South Shore, Inc. v. Ewell, 59 So.2d 647 (Fla. 1952) (public acceptance by use of the main thoroughfare of platted subdivision constituted acceptance of the offer to dedicate the entire system of streets appearing on plat); and Hughes v. Town of Mexico Beach, 455 So.2d 566 (Fla. 1st DCA 1984) (same). Although the cases mentioned are not exactly on point, the concepts involved are sufficiently analogous to afford a reasonable basis for our view that "any part" refers to both length and width.
We turn next to the "use" factor, as contained in the statute, and again we draw upon decisions dealing with legal concepts which, while not directly on point, are nevertheless sufficiently analogous to furnish a basis for decision. Preliminarily, we think it is rather obvious that words "so long as the same are used" contemplates public, rather than private use, where the easement or right-of-way is one claimed by a public entity. The distinction between public and private use is recognized as relevant in determining claims regarding the acquisition of road easements by prescriptive right. Cf. Supal v. Miller, 455 So.2d 593 (Fla. 5th DCA 1984) (proof of use by members of the public does not establish private prescriptive easement). We find nothing in the statute indicating the abandonment of this distinction. For other aspects of the "use" factor we again turn to the law of prescriptive rights. The nature of the problems presented in attempting to apply the statutory exception is similar to those dealt with in the law regarding prescriptive rights. The establishment of a highway by prescription is said to be based upon the presumption of a prior grant. 2 Fla.Jur.2d, Adverse Possession, § 54; Couture v. Dade County, 93 Fla. 342, 112 So. 75 (1927). However, as stated in Downing v. Bird, 100 So.2d 57 (Fla. 1958), the trend of modern authorities is to abandon the "prior grant" presumption and to treat prescriptive rights as rights acquired by methods substantially similar to those applying to title by adverse possession. Thus, the acquisition of rights by prescription is based upon possession, or use, as is necessary also for operation of the statutory exception.
*209 The nature of the use required for prescriptive rights or adverse possession is further described in Downing v. Bird, supra:
In addition the use must be adverse under claim of right and must either be with the knowledge of the owner or so open, notorious, and visible that knowledge of the use by and adverse claim of the claimant is imputed to the owner. In both rights the use or possession must be inconsistent with the owner's use and enjoyment of his lands and must not be a permissive use, for the use must be such that the owner has a right to a legal action to stop it, such as an action for trespass or ejectment.
Further in either prescription or adverse possession, the use or possession is presumed to be in subordination to the title of the true owner, and with his permission and the burden is on the claimant to prove that the use or possession is adverse. This essential element as well as all others must be proved by clear and positive proof, and cannot be established by loose, uncertain testimony which necessitates resort to mere conjecture. (citations omitted)
Further, on the subject of acquisition of prescriptive rights by a public entity, the following text from 2 Fla.Jur.2d, Adverse Possession, § 54, is pertinent:
While the general public is incapable of acquiring prescriptive rights or title by adverse possession, legally organized or political entities, as distinguished from the unorganized general public, may acquire an easement by prescription or title by adverse possession. Thus, it is held in Florida that an easement for a public road, highway, or beach may be acquired by prescription. Of course, a political entity, such as a city or county, represents the public in the establishment of such an easement. The requirements appear to be much the same as those for the acquisition of private prescriptive easements. Thus, to establish a public roadway by prescription, it is necessary to prove (1) that the public had a continued and uninterrupted use or enjoyment of the lands of another for a roadway for a period of at least 20 years, (2) the identity of the roadway, that is, its route, termini, and width, and (3) that the use or enjoyment was adverse or under claim of right. Such proof must be clear and positive, and any doubt as to the creation of the road must be resolved in favor of the owner over whose land the right is sought.
It is obvious that not all elements of the law pertaining to prescriptive rights would be of assistance in interpreting the "use" requirement of the statute. For example, the statute implies no necessity for proof of continuous use or possession for any definite period of years, whereas twenty years is the necessary period of use or possession for acquisition of rights by prescription. It seems apparent also that the "use" referred to in the statute need not in all cases be "open, notorious, and visible," since the statutory exception is broad enough to cover easements for underground pipes, cables, and other equipment or structures. It seems logical, nevertheless, to borrow from the body of law governing prescriptive rights in order to arrive at workable standards by which to judge the sufficiency of the evidence regarding use of the disputed right-of-way. It appears, therefore, by extrapolation from the principles referred to above, that the proof must demonstrate (1) use by the public, (2) the identity of the roadway, its location, width, length, and (3) that the use was adverse, in the sense that (for road purposes) it must be inconsistent with the owner's use and enjoyment of his own lands, and not a permissive use. As further indicated by reference to the law relating to prescriptive rights, the burden of proving adverse use would fall upon the public entity, and should be clear and positive, as opposed to uncertain or conjectural.
Reviewing the evidence in the light of the foregoing, it is clear that the city failed to produce evidence showing that Crystal Road was in recent times ever opened or subjected to public use. Mr. O'Steen's testimony does not establish public *210 use. It merely shows that Mr. O'Steen's testimony does not establish public use. It merely shows that Mr. O'Steen's father, during the late 1950's and until his death in 1965, entered the area of the claimed right-of-way at an indefinite point somewhere west of the Horns' parcel, travelling back and forth for logging and agricultural purposes on his own land, and that trucks also entered for the purpose of furnishing lime to his property. Mr. O'Steen also testified to earlier use of the road as a youth and of the present use for going into the area where his mother still owns property. None of this activity touched the Horns' property, and is consistent with purely private use. See, Blowers v. Williams, 360 So.2d 1293 (Fla. 1st DCA 1978) (evidence held insufficient to support trial court's finding that appellee established a prescriptive easement along the border of appellant's interior land and grove). However, this evidence was insufficient to show use to the extent, intensity, adverse character or duration required to establish public use. Further, it was not shown that the county or the city at any time cleared, graded, or performed any other work on Crystal Road, other than when the Horns' property was entered by the city. At no other time has the city exercised, or attempted to exercise control over the road except on the occasion when it filed suit for removal of Bartholf's fence. As already noted, this did not affect the Horns' possession of the parcel in dispute, and it has not been shown that any "use" of the roadway was made by the city or the public after the termination of the lawsuit.
The city relies heavily upon documentary evidence of a 1971 building permit and two 1974 mobile home permits for Crystal Road addresses, and upon computer billing notices reflecting the furnishing of electricity to these addresses. Two of these electricity accounts were shown as current accounts. The parcel of property upon which these improvements are located (Tract 6, Jacksonville Heights) lies west of the Horns' property, and its north boundary is the center line of what would be Crystal Road. There are several deficiencies in this evidence, however, which undoubtedly explain its rejection by the trial court. No owner or tenant of the building or the two mobile homes, nor any other witness, testified as to the use made of the disputed right-of-way. There was no evidence that what was shown on certain surveys as a somewhat meandering "dirt grade" road running from the direction of Crystal Springs Road (lying north of the area in question), thence along a portion of the claimed right-of-way and onto Tract 6, was used by any member of the travelling public. The city's chief surveyor, Mr. MacGregor, testified that "they" (apparently referring to the mobile home users) come in off Crystal Springs Road, "just a more or less trailer type road" into the Crystal Road area. There was no evidence that this access road leading into the area where the building and mobile homes are located connected with any other road, or served any purpose whatever except the assumed convenience of the mobile home owners. There is no description of the area within the confines of the Crystal Road right-of-way other than MacGregor's affirmation that there are "trees and bushes and shrubs there." And finally, even assuming use by the mobile home owners or tenants (there was no evidence of the extent of occupancy) for access, this evidence, again, as with respect to O'Steen's testimony, is consistent with private use, see Blowers v. Williams, supra, but is insufficient to establish public use.
We have not overlooked the evidence indicating the existence of a thirty-foot right-of-way between Blocks 1 and 4, Jacksonville Heights, the south boundary of which is the north boundary of Tract 6, as shown on the Jacksonville Heights plat. The present controversy does not concern that right-of-way, nor the rights of any abutting owners or users, if any. The city's survey shows the "dirt grade" road used for access to the mobile homes meandering along generally between the center line of this platted right-of-way and what would be the south boundary of Crystal Road, so that at least a portion of this approximately 600 *211 feet of dirt road would be entirely within the platted thirty foot right-of-way. Thus, the evidence of use by the mobile home owners might just as logically be related to the platted thirty foot easement as to the sixty-foot roadway claimed by the city.
Under the evidence presented here, we cannot envision any basis upon which the trial judge could make a decision other than the one he made. We therefore affirm the trial court's finding that there was insufficient proof of use of the roadway so as to prevent the operation of the exception to the statute.
AFFIRMED.
BOOTH, C.J., and WENTWORTH, J., concur.