W. SHARP, Judge.
The Water Control District of South Bre-vard County appeals from an adverse judgment in a quiet title suit in favor of various landowners who were the plaintiffs below. The trial court ruled that the District had not obtained legal title to the disputed lands by any effective means, and that the current landowners were entitled to have the District’s claims to a 117 foot-wide right-of-way for drainage and maintenance along the west side of Canal C-37 declared null and void and nonexistent. The trial court, however, recognized the District’s rights-of-way to the canal and an area to the immediate east of the canal, which had been utilized by the District for maintenance of the canal since the canal was built, in 1927. We reverse that part of the decree which deals with the rights-of-way on the west side of the canal, which in contrast with the east side, was never used by the District.
The record in this ease shows that all of the appellees, John Roschman, Marie Taylor, Clyde Taylor, George Wells, Ramone Taylor, Richard Love, Jr. as Trustee, Donald Huber, Alan Thomas, and Billy Davidson bought the properties from prior owners, in 1990. In 1991, they filed this quiet title suit. There are six parcels of land involved in this case. Five are located north of Malabar Road and *523 one is located south of that road in Brevard County. The disputed property is a 117 foot right-of-way along canal C-37’s west side. It is dense and overgrown and has never been cultivated or improved.
We first direct our attention to appellant’s argument that the evidence was sufficient to establish that the District originally received clear title to the land that is the subject of the easement. This involves a historical analysis which goes back to the original creation of the District, formed under the provisions of Chapter 6458, Laws of Florida (1913). That statute remains today, essentially unchanged, in section 298.001-78, Florida Statutes. It authorizes the creation of water districts by chancery court proceedings, in which title is conveyed to the District by the landowners in a District.
The proper procedure in creating the District (then called the Melbourne-Tillman Drainage District)[1] was presumptively followed in this ease. On January 7, 1922, the chancery court entered a decree establishing the Melbourne-Tillman Drainage District. On October 3, 1922, a decree of confirmation involving the District was recorded. This decree included the disputed property. All of the appellees’ predecessors in title to the property (W.C. Carter, E.W. Thompson and Edwin Hult) signed the petition to create the District. Carter and Hult hired an attorney and engineer and participated in the election of the District’s first board of directors.
The 1922 Decree expressly states that it confirms a report of the commissioners who had been appointed to appraise the property which was required for the rights-of-way for the District roads and canals. The property disputed is listed in this report. Section (29) of the 1913 law provided:
The board ... shall not have the right to enter or appropriate any land for rights-of-way, holding basins or other works of the districts, until the prices awarded to the owners of such land shall have been paid.... Whenever any land is acquired by any district under the provisions of this Act and the price of such property has been paid the owner by the district the title, use, possession and enjoyment of such property shall pass from the owner and he vested in the district-(emphasis supplied)
Title to the property and the rights-of-way did not vest in the District until the owners were paid. But when they were, title vested by operation of law.
Sections 11 and 13 of chapter 6458 require the board of supervisors to file a petition to appoint three commissioners to appraise or value property to be acquired for rights-of-way, holding basins, and other drainage works, and to assess benefits and damages under the Plan of Reclamation (which is a water management plan). The record shows three commissioners were appointed on August 5, 1922 to survey the property and prepare a report. The report includes a description of the property necessary for acquisition by the District for the canals and rights-of-way, as well as the price to be paid to the property owners. The commissioners’ report was filed on September 2, 1922. The report refers to a final report in the Plan of Reclamation (“the engineer’s report”) dated August 1, 1922 which was prepared by the engineer. The engineer’s report contained a map which showed the locations and configuration of all the canals that were eventually built by the District, including Canal C-37, as well as their adjoining 117 foot rights-of-way along both the east and the west side of the canals.
Section 15 provides that any property owner may object to the commissioners’ report. The court must approve and confirm this report and may also order the report changed to conform with any objections or with its own findings. The statute provides that any property owner “may accept the assessment of damages in his favor ... or acquiesce in [the commissioners’] failure to assess damages in his favor, and shall be construed to have done so” unless he notifies the supervisors before a certain time that he *524 objects to the assessment. Only in the latter event shall the supervisors initiate a separate condemnation action.
The 1922 Decree approved the commissioners’ report and appropriated title in the District to all the property and rights-of-way described in the report. This decree was recorded in chancery order book 6, page 288 and re-recorded in the official record book 3074, page 2349 of the Public Records of Brevard County, Florida. No property owner objected to the assessments in this case. Therefore, no separate condemnation action was required.
After the chancery court decree (January, 1922) which created the District and the 1922 Decree of Confirmation (October, 1922), the Governor of the State of Florida signed Chapter 9999, Laws of Florida (1923), which expressly ratified, validated and confirmed all of the proceedings creating and organizing the Melbourne-Tillmán Drainage District.
The property owners whose property was to be conveyed to the District by the 1922 Decree were paid for their property on March 26, 1924. The April 4, 1924 minutes of the District show that such payments were made and payment records customarily used at that time are available. The trial court excluded the index cards which allegedly also evidenced payment to the owners.
In 1922 and 1923, many of the canals were built, but Canal C-37 was not completed until September of 1927. It has been maintained continuously by the District, openly visible to all parties. Appellees concede they were fully aware of it at the time they purchased their property.
In 1928, the chancery court held a bond validation proceeding which reviewed all issues relating to the District. No irregularities were found. In 1940, another bond validation proceeding was held, and legal notice was given to all property owners in the District. The court judicially acknowledged the engineer’s map referenced in the 1922 chancery court proceedings and reaffirmed the validity of these prior proceedings in all respects. The engineer’s map, together with the original 1922 commissioners’ report, shows that the location of the District’s western right-of-way is the disputed one hundred seventeen feet of property.
Based on the above, we conclude that the District properly acquired title to the disputed property by operation of law; and that appellees failed to overcome the burden of proving non-ownership of the District as it must do in a quiet title proceeding. Palmer v. Greene, 159 Fla. 174, 31 So.2d 706, 708 (1947); Sheffield v. Carter, 141 So.2d 780, 788 (Fla. 2d DCA 1962). The record sufficiently shows that all proceedings required by Chapter 6458 were conducted as required by that section. Section 29 of Chapter 6458 provides:
Whenever any land is acquired by any district under the provisions of this Act and the price of such property has been paid the owner by the district, the title, use, possession and enjoyment of such property shall pass from the owner and be vested in the District, and subject to its use, profit, employment and final disposition. (emphasis supplied)
And, the 1922 Decree states:
IT IS THEREFORE ORDERED, ADJUDGED AND DECREED:
That the said Commissioners’ Report of the said Melbourne-Tillman Drainage District be and the same is hereby approved and confirmed.
And this court further finds that the property owners[2] within or without the boundary lines of the said Melbourne-Tillman Drainage District, whose lands or other property shown by the report of the commissioners to be needed for rights-of-way in constructing said improvements and works, have accepted the assessment of damages in their favor, or have acquiesced in the failure of the said Commissioners to assess damages in their favor, (emphasis supplied)
Appellees argue that the maps prepared with the original plan do not show the length or width of the canals or rights-of-way which were proposed to be constructed and pur *525 chased. The maps merely show lines along section lines which purport to represent future canals. They argue that without a proper plan it is impossible to determine which property shall pass from the owner and be vested in the District. Appellees contend that title could not pass until the monies for the property were paid, and that money was not paid to owners until after 1922. All of the foregoing is true. But as discussed above, all of the foregoing constitutes compliance with the requirements of the 1913 Act under which the District was formed.
The appellees also argue there is no evidence of payment to record owners of any parcel involved in this case. With respect to the south parcel, they contend there is no record of payment at any time because it was Thompson and not Carter or Hult who was the owner, and with respect to the northern parcels the evidence is insufficient. Notation in the commissioners’ report of checks is undated and ambiguous. No receipts from any of the record owners exist. The index cards which could provide further evidence of payment were excluded by the judge. Ap-pellees submit that without such proof, section 29 of the 1913 Act prevents title from vesting in the District. This is an inaccurate statement.
The burden of proof has been reversed by appellees. The presumption is that payment was made and that the District has title. Appellees must prove otherwise. See, e.g., Wilson v. Tanner, 346 So.2d 1077, 1080 (Fla. 1st DCA 1977); § 95.13, Fla.Stat. (1991) (in adverse possession, presumption is with owner). Moreover, since appellees were the plaintiffs, the burden of proving title is on them; not the District. The evidence at trial is not sufficient to prove nonpayment to the owners.
We must also determine whether the District’s right in the property has been properly preserved over the years. Appellants suggest, inter alia, that the Marketable Record Title Act (MRTA), Ch. 712, Florida Statutes (1991) may be applicable in this case. MRTA sets out new rules for determining the ownership of property. It replaces the previously long required examination of an abstract of title (which may go back to Spanish land grants) with a shortcut method of examining title, and it extinguishes stale claims and ancient defects of title. § 712.04, Fla.Stat. (1992). See Gregory M. Cook, The Marketable Record Title Act Made Easy, Fla.B.J., Oct. 1992, 55. Its purpose is to simplify the conveyance of real property, stabilize titles, and give certainty to land ownership. City of Miami v. St. Joe Paper Co., 364 So.2d 439 (Fla.1978).
Pursuant to MRTA, an examiner finds a “root of title” in the title’s chain. It must be at least 30 years old and legally sufficient to pass title. Any defects or claims prior to the root (pre-root) are extinguished, with exceptions. Claims or defects arising out of the root or subsequent to it (post-root) are not extinguished and must be examined in the same manner as was used prior to MRTA. Pre-root documents need only be checked for specific exceptions. The existence of any of these exceptions results in defects or title not being cut-off by the 30-year period.
The exceptions fall in the following general categories:
1. parties in possession of the land (not discernible through examination of abstracts);
2. persons in whose names the land is assessed on the county tax roles for three years after assessment (not discernible through examination of abstracts);
3. rights arising subsequent to the root of title (i e., these rights are not extinguished);
4. rights reserved to the U.S. Government or state government;
5. old claims of rights in property preserved by filing a notice under MRTA;
6. easements which are actually in use (not discernible by examination of abstracts);
7. preroot interests IF they are listed in root or post-root documents by specific reference.
§ 712.03, Fla.Stat. (1991); Gregory M. Cook, The Marketable Record Title Act Made Easy, Fla.B.J., 55, 57.
*526 The Northern parcels’ root documents and subsequent deeds of record, all contain reservations in favor of the District. Their “roots of title” conveyances all contain the following notation:
Subject to rights of way for public roads and canals of the Melbourne-Tillman Drainage District.
But, appellees argue that reference in a post-root document, which lacks a specific reference to the pre-root record book and page, is not sufficient under MRTA.[3]
The Southern parcel, owned by Huber, Roschman and Thomas, contains no root of title document which reserves an interest to the District or its predecessor. Nor do any post-root documents contain such reservation. However, there is a pre-root document that does contain a reservation for rights along this canal in favor of the District.[4] Although the Southern parcel does not have a root of title document which reserved an easement for the District, there is in this chain of title, earlier than the root, a document which contains a reservation for the canal easements in favor of the District.
MRTA contains a governmental easement or rights-of-way exception which provides that such interests are not extinguished. § 712.03(1) & (5), Fla.Stat. (1991). Excluded from MRTA’s operation are:
[rjecorded or unrecorded easements or rights, interests or servitude in the nature of easements, rights-of-way and terminal facilities, including those of a public utility or of a governmental agency, so long as the same are used and the use of any part thereof shall except from the operation hereof the right to the entire use thereof. No notice need be filed in order to preserve the lien of any mortgage or deed of trust or any supplement thereto encumbering any such recorded or unrecorded easements, or rights, interest, or servitude in the nature of easements, rights-of-way, and terminal facilities_ (emphasis supplied)
In addition, section 704.05(1), which pertains to easements and rights-of-entry, emphasizes this exclusion by providing:
The rights and interests in land which are subject to being extinguished by marketable record title pursuant to the provisions of s. 712.04 shall include rights of entry or of an easement, given or reserved in any conveyance or devise of realty_ However, the provisions of this section shall not apply to interests reserved or otherwise held by the state or by any of its agencies, boards, or departments, (emphasis supplied)
Section 704.05(3) provides the law shall operate “both prospectively and retrospectively.”
Since the District is a political subdivision of the State of Florida,[5] the District’s rights-of-way have not been extinguished under Florida law if at least part of the easement has been used. § 712.03(5), Fla.Stat. (1991). Rights or easements acquired for the use and benefit of the public are not easily lost or surrendered, and MRTA should be broadly construed to protect these rights to the extent possible under the law. City of Jacksonville v. Horn, 496 So.2d 204 (Fla. 1st DCA 1986).
It is undisputed by the parties that the eastern portion of the rights-of-way were used by the District for maintenance of the area. The trial judge apparently considered the east and west rights-of-way as separate. But the original reservation and all subsequent reservations refer to the canals and rights-of-way as one, not as two separate rights-of-way to each canal. Since the easements constitute a unified reservation, use of a part preserves the whole. § 712.03(5), Fla. Stat. Hence, the rights-of-way have not been extinguished under MRTA. See Florida Dept. of Transportation v. Dardashti *527 Properties, 605 So.2d 120 (Fla. 4th DCA 1992), rev. denied, 617 So.2d 318 (Fla.1993).
REVERSED.
GOSHORN and PETERSON, JJ., concur.

. On October 1, 1986, Chapter 86-418 became effective. It provides that "all property, real and personal, of the existing Melbourne-Tillman Water Control District, which shall be and is hereby dissolved by this act, shall be transferred over and become the property of the Water Control District of South Brevard.”

. This would include Thompson, whom appellees contend was the owner of the southern parcel.

. See § 712.03(1), Fla.Stat. (1991).

. The most recent deed containing a reservation to the District is dated June 19, 1941. It states:
Except right-of-way for canals of the Melbourne-Tillman Drainage District and public roads.

.20 Fla.Jur.2d Drain & Sewers, § 4 at 180; Martin v. Dade Muck Land Co., 95 Fla. 530, 116 So. 449 (1928); City of Miami v. Lewis, 104 So.2d 70 (Fla. 3d DCA 1958).