DAVIS, Chief Judge.
Joseph Lehmann and his wife, Therese Lehmann, own beachfront property on the Gulf of Mexico in Sarasota County. Cocoanut Bayou Association (CBA) owns the parcel of beachfront property adjoining the Lehmanns’ property on the north. This appeal involves a dispute over the location of the property line dividing their respective parcels.
The facts regarding the parties’ chain of title to the property are not in dispute. To provide the background needed to understand the issues on appeal, it is necessary to review the recorded transactions that *290 are involved in the determination of ownership of the parcel at issue and describe the properties.
The 1912 revised plat of the Siesta Subdivision recorded in the public records of Sarasota County showed the property divided into blocks separated by platted streets.[1] Each block was then divided into numbered lots. The plat depicts Bee Street running east and west between Blocks 59 and 60, which are bordered on the east by Higel Avenue and on the west by Gulf Avenue, also known as Shell Road. Immediately west of Gulf Avenue, the plat shows a bayou which at one time contained water. Block 69 is located between the bayou on the east and the Gulf of Mexico on the west.
All of the property involved in this litigation was originally owned by E.S. Boyd and his wife Helen with the exception of Lots 10 and 11 of Block 60. These two lots were owned by Kathleen Ingalls, and she deeded title to the lots to James and Alice Thomas in 1945. Then in 1946 the Boyds executed a deed in favor of the Thomases, conveying title to Lots 9,12,13, 14, and the north half of Lot 15 in Block 60. Lots 9 and 10 are adjacent to the south side of Bee Street.[2] In addition to property described by lot numbers, the Boyd/Thomas deed included land described by a detailed set of directions. The description’s point of beginning was the center line of Bee Street extended beyond the end of Bee Street to the west side of Gulf Avenue (the street running north and south parallel to the bayou and the Gulf of Mexico and forming the western boundary of Block 60). The description called for the line to extend west to the waters of the Gulf of Mexico, then south along the waters’ edge for a certain distance, then east to the western edge of Gulf Avenue, and then north to the point of beginning. It is important to note that the property described is all west of Gulf Avenue.[3]
In 1950 Mr. Thomas deeded his interest in the above-described property to Mrs. Thomas. The Thomas/Thomas deed contained the same property description as the 1946 Boyd/Thomas deed, that is, the property bordered by the extended center line of Bee Street on the north, Gulf Avenue on the east, and the Gulf of Mexico on the west. The Thomas/Thomas deed, however, was not recorded until 1958.
Prior to that recording, in 1952, Mr. and Mrs. Boyd conveyed to CBA by deed property north of Bee Street. By the Boyd/ CBA deed, the Boyds conveyed the south 100 feet of Block 59, as described in the 1912 plat. They also conveyed property adjacent to the northern border of the Thomases’ property. The description did not use the lot designations of the 1912 plat; instead it provided a description in terms of platted streets. That is, the point of beginning was the point on the western edge of Higel Avenue 100 feet north of the center line of Bee Street. From that point of beginning, the property line extended west to the waters of the Gulf of Mexico, then south along the waters’ edge to the southern side of the extended Bee Street, and then east along the southern edge of the extension of Bee Street. This south *291 ern boundary terminated at the eastern edge of Gulf Avenue, at which point the property line extended north along the eastern edge of Gulf Avenue to the center line of Bee Street, then east along the center line of Bee Street to the western edge of Higel Avenue and then north to the point of beginning.
By this description, the Boyds attempted to convey to CBA property that included a twelve-and-one-half-foot-wide stretch of land along the south side of the extended center line of Bee Street from the western side of Gulf Avenue to the Gulf of Mexico — property they already had deeded to the Thomases.[4] But by the description of the property, the Boyds also added to the CBA conveyance their interest in the land that is shown on the plat as Gulf Avenue along the south side of the extended center line of Bee Street. This interest had not been included in the 1946 Boyd/Thomas deed.
In 1964 Mrs. Thomas conveyed her interest in Block 60 to her daughter, Alice Thomas Shannon. The deed referred to the property by the lot numbers as indicated by the 1912 plat. However, in addition to the property described by lot numbers, the description added the property running from the western boundary of Lot 10 to the waters of the Gulf of Mexico bordered to the north by the line extended from the northern side of Lot 10 west to the Gulf of Mexico. It should be noted that this description included the property located within the land designated for Gulf Avenue. Title to the property identified in the Thomas/Shannon deed subsequently was transferred through several transactions until ultimately the Lehmanns obtained title in 1979.[5] There are no issues regarding the chain of title from Thomas to the Lehmanns except for the matter of the ownership of the property as described above in both the 1946 Boyd/Thomas deed and the 1952 Boyd/CBA deed.
Upon the purchase of the property in 1979, Mr. Lehmann was made aware of the disputed ownership of the parcel along the northern boundary line of his property. But the Lehmanns believed that the Boyd/ CBA deed was a “wild” deed because Boyd had attempted to convey that which he did not own. In what appears to be an attempt to protect their interest in the contested parcel, Mr. Lehmann executed a deed to his then-wife Judy C. Lehmann purporting to convey title to the parcel to her alone. This deed was recorded on July 8⅛1982. Although there are several other transactions of record that are discussed by the parties, the transactions described herein are the only transactions relevant to our decision.
In 2012 CBA filed a quiet title action against the Lehmanns seeking a determination that it was the owner of marketable title to the contested parcel, which it described as “that property lying to the south of the center line of Bee Road [sic] had it been extended from the platted portion to the Gulf of Mexico and south 12 1/2 feet west 70 feet and north to the extended center line of Bee Street.” The action was brought on both the theory of *292 adverse possession and the application of the Marketable Record Title Act (MRTA). See ch. 712, Fla. Stat. (2012). MRTA provides in pertinent part that
[a]ny person having the legal capacity to own land in this state, who, alone or together with her or his predecessors in title, has been vested with any estate in land of record for [thirty] years or more, shall have a marketable record title to such estate in said land, which shall be free and clear of all claims except the matters set forth as exceptions to marketability in s. 712.08.
§ 712.02, Fla. Stat. (2012).
CBA’s complaint alleged that the July 9, 1952, Boyd/CBA deed was a sufficient root of title under MRTA and that more than thirty years had passed since the recording of that deed. According to CBA, under MRTA, the 1952 Boyd/CBA deed was evidence that marketable record title was vested in CBA and that the Le^aanns’ claim to ownership was barred.
CBA also alleged that its occupancy of the property, which commenced in 1952, met all the requirements of adverse possession so that its title to the property had vested. Although not alleged in its complaint, at trial CBA argued that it'had good title to the contested property and that this property was never included in any of the transactions in the Lehmanns’ chain of title.
In its final judgment, the trial court found that the contested property was included in the Boyd/Thomas deed, the Boyd/CBA deed, and the Thomas/Thomas deed. The only property described in all three deeds was the property west of Gulf Avenue. We therefore conclude that the trial court did not accept CBA’s argument that the contested property involved in this litigation is limited to the property within Gulf Avenue but rather determined that the contested property includes land west of Gulf Avenue to the waters’ edge of the Gulf of Mexico. Because the trial court sought to settle the dispute as to the larger parcel, it is necessarily implied that the trial court did not limit its consideration to the property originally described as Gulf Avenue. ■ Accordingly, our review is limited to the trial court’s determination of the ownership of the property it described as the “Disputed Parcel.”
For their part, the Lehmanns raised several affirmative defenses below, including exceptions to MRTA spelled out in the statute. See § 712.08. The Lehmanns maintain that the application of MRTA is precluded by (1) the 1953 recording of the 1950 Thomas/Thomas deed, (2) the recording of the July 8,1982, Lehmann/Lehmann deed, (3) the payment of taxes on the disputed property by the Lehmanns, and (4) the open possession of the property by the Lehmanns. The case proceeded to a nonjury trial on CBA’s complaint and the Lehmanns’ affirmative defenses.[6]
Although the trial court’s final judgment does not mention MRTA, it does include a specific finding that the 1952 Boyd/CBA deed “is the root of title.” This suggests that MRTA was the basis of the trial court’s determination that CBA’s “title to and ownership of the Disputed Parcel is superior to the interest of any party, including the [Lehmanns].” The issue that *293 we must resolve in this appeal is the applicability of MRTA to the facts of this case.
“MRTA .... describes] certain titles in land of record for a stated time, declares them to be of marketable quality and, with certain exceptions, undertakes to completely extinguish all other estates, interests], claims or charges as against such titles.” Holland v. Hattaway, 438 So.2d 456, 463 (Fla. 5th DCA 1983). The statute provides that once a person — along with his or her predecessors in title — has been vested with an estate in land of record for a period of thirty years or more, he or she shall have the marketable record title to that estate. § 712.02. The statute then goes on to provide that the act would not extinguish competing rights under certain exceptions. See § 712.03. And “MRTA can even confer marketability to a chain of title arising out of a forged or wild deed.” Holland, 438 So.2d at 463 (citing Marshall v. Hollywood, Inc., 236 So.2d 114 (Fla.' 1970)).
In the instant case, the CBA’s quiet title action was filed August 15, 2012. This is the date by which the marketability of CBA’s title is to be determined. See id. To determine CBA’s “root of title,” we must identify the last recorded transaction which both purported to transfer title to CBA and was recorded prior to August 15, 1982, thus satisfying MRTA’s thirty-year requirement. As found by the trial court, the 1952 Boyd/CBA deed is CBA’s “root of title” as defined by MRTA.[7]
At the time of the 1952 conveyance, the Boyds did not own the contested parcel, and their attempt to convey title to the parcel to CBA was therefore a “wild” deed. Nevertheless, as we have noted, such a wild deed may become the root of marketable title under MRTA. See City of Miami v. St. Joe Paper Co., 364 So.2d 439, 446-47 (Fla.1978) (“[MRTA] is not concerned with the quality of the title conveyed by the root of title so long as the root purports to convey the estate claimed. This can be so even though a deed is not part of the chain of title emanating from the sovereign and is therefore often called an ‘interloping’ or ‘wild’ deed. It can, under the marketable title acts, form a root of title which may eventually cut off the interest of a person who might otherwise' have a claim.” (quoting Wilson v. Kelley, 226. So.2d 123, 127 (Fla. 2d DCA 1969))).
The next step in applying MRTA is to determine whether any of the exceptions stated in section 712.03 apply to preclude the statute’s application. The Lehmanns argued below that the 1953 recording of the 1950 Thomas/Thomas deed and the July 8, 1982, recording of the Lehmann/Lehmann deed triggered the statutory exceptions. They argued that these deeds represented interests in the property arising from title transactions which were recorded subsequent to the date of the root of title — July 9, 1952— but within the thirty-year period — which would have expired July 9, 1982.[8] Accordingly, the Lehmanns argued below *294 that both of these recordations met the requirement of the exception specified in section 712.03(4) and that therefore MRTA did not transform the 1952 Boyd/ CBA deed into evidence of marketable title.[9]
The trial court’s final judgment rejected this argument by finding that the 1982 Lehmann/Lehmann conveyance “was not in good faith.” With that finding, and the finding that the 1952 Boyd/CBA conveyance was a valid root of title, the trial court determined that CBA had an ownership interest that was superior to that of the Lehmanns and granted the relief requested by CBA. The final judgment, however, does not consider the 1958 recor-dation of the Thomas/Thomas deed. This was an oversight by the trial court.
Because the Thomas/Thomas deed was recorded after the 1952 recording of CBA’s “root of title,” the exception to MRTA in section 712.03(4) is triggered. The 1953 Thomas/Thomas deed included the description of the property designated by the trial court as the “Disputed Parcel” and put CBA on notice of Mrs. Thomas’ claim to the same property. Thus MRTA cannot be employed to perfect the 1952 “wild” Boyd/CBA deed. Accordingly, the trial court erred in concluding that the 1952 Boyd/CBA deed was the root of title perfected by the application of MRTA and in granting CBA relief based on MRTA.[10] We therefore reverse that portion of the final judgment.
We note that the final judgment also suggests that the trial court considered and rejected the Lehmanns’ counterclaim for title based on their adverse possession of the contested property. We affirm this ruling without further discussion. Because ownership remains at issue, we remand for further proceedings.
Affirmed in part, reversed in part, and remanded.
NORTHCUTT and KHOUZAM, JJ., Concur.
APPENDIX A
Section of 1912 plat map modified with pertinent detailed references.
*295 [[Image here]]

. A section of the 1912 plat map is attached to this opinion as Appendix A.

. The Boyd/Thomas deed also included lots in Block 69 which are not relevant to this appeal.

.The record is not clear as to where the water line of the Gulf of Mexico existed at the time of this deed. The description given for this additional land suggests that the land platted in 1912 as Block 69 was underwater and that some portion of the property shown as the bayou was dry land.

. In its final judgment, the trial court designates this twelve-and-one-half-foot stretch as the "Disputed Parcel” and describes it as being approximately eighty-feet long and "lying between the Westerly extension of the center line of vacated Bee Street to the waters of the Gulf of Mexico and the North line of platted lot 10 in Block 60 extended to the waters of the Gulf of Mexico.”

. Originally, Joseph L. Lehmann and then-wife Judy C. Lehmann took title. However, as part of their dissolution of marriage proceeding, title was transferred to Joseph Leh-mann individually, and he later transferred title to himself and his second wife Therese Lehmann.

. The Lehmanns also filed a counterclaim asking that the trial court quiet title in their names. They alleged that the July 8, 1982, deed is a valid root of title and that by MRTA, marketable title now vests with them. They also claimed ownership on the theory of adverse possession. The trial court ruled against the Lehmanns on their claim for adverse possession; however, the trial court’s final judgment does not address their MRTA claim.

. CBA suggests that a 1982 quitclaim deed from the last Board of Directors of the unincorporated Cocoanut Bayou Association to CBA, Inc., would also serve as a root of title and that the later recordations in the Leh-manns' chain of title were before that deed. However, the deed is dated September 30, 1982, and the recording date is October 4, 1982. This recording date was not thirty years prior to the filing of the quiet title action on August 15, 2012, and by statutory definition could not serve as a root of title under MRTA.

. It does not go without notice that the July 8, 1982, Lehmann/Lehmann deed was recorded on the last day of the thirty-year period.

. Section 712.03(4) states that marketable record title does not affect “[e]states, interests, claims, or charges arising out of a title transaction which has been recorded subsequent to the effective date of the root of title.”

. Because the application of MRTA is precluded by the exception in section 712.03(4) implicated by the 1953 Thomas/Thomas deed, we need not determine the efficacy of the 1982 Lehmann/Lehmann deed.