NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

DEPARTMENT OF TRANSPORTATION,   )
                                )
            Appellant,          )
                                )
v.                              )          Case No. 2D14-305
                                )
MID-PENINSULA REALTY INVESTMENT )
GROUP, LLC, a Florida limited liability )
company,                        )
                                )
            Appellee.           )
_____ )


Opinion filed February 13, 2015.

Appeal from the Circuit Court for Pasco
County; Stanley R. Mills, Judge.

Marc Peoples, Assistant General Counsel,
Department of Transportation, Tallahassee,
for Appellant.

Landis V. Curry III and Patrick M. Causey
of Hill, Ward & Henderson, P.A., Tampa,
for Appellee.


MORRIS, Judge

          The Department of Transportation (DOT) appeals a final judgment

quieting title to property in favor of Mid-Peninsula Realty Investment Group, LLC.

Although DOT obtained the property in question through an eminent domain proceeding

in 1971, the property was conveyed in 1974 to private owners through a "wild deed."[1]

Mid-Peninsula eventually obtained title and thereafter brought a declaratory judgment and quiet title action pursuant to the Marketable Record Title to Real Property Act (MRTA), ultimately succeeding below.  Because we agree with the trial court that the exception to MRTA set forth in section 712.03(5), Florida Statutes (2003), does not apply to rights of way held in fee and that DOT did not prove it possessed the property as set forth in section 712.03(3), we affirm.

## I.  BACKGROUND

In 1970, DOT brought its eminent domain proceeding in relation to fourteen parcels located in Pasco County; the trial court entered an order of taking in 1971.  These parcels, known as the Bear Creek Watershed, were used to construct a drainage canal.[2]  The canal is located just north of State Road 52 and to the west of U.S. Highway 19.  The canal crosses under U.S. 19.  Of the original fourteen parcels taken by DOT in 1971, parcel 338 is the subject of this dispute.  Parcel 338 was acquired during the eminent domain proceedings pursuant to a stipulation entered into by DOT and the then private owners.  The trial court's order vested DOT with "full and

---

[1]A "wild deed" has been defined as "a purported instrument of conveyance executed by the named grantor knowing that he or she has no title of any kind to the property described therein."  Frazier v. Goszczynski, 39 Fla. L. Weekly D2133, D2133 (Fla. 5th DCA Oct. 10, 2014); see also Lehmann v. Cocoanut Bayou Ass'n, 39 Fla. L. Weekly D2259, D2261 (Fla. 2d DCA Oct. 29, 2014) (referring to a "wild deed" as a deed that " 'is not part of the chain of title emanating from the sovereign' " (quoting City of Miami v. St. Joe Paper Co., 364 So. 2d 439, 446-47 (Fla. 1978))).

[2]The Bear Creek Watershed ameliorates flooding to U.S. Highway 19 and other properties by permitting water to drain into the canal that then empties into the Gulf of Mexico.

complete ownership" of the parcel, and the order was recorded in the Pasco County public records at O.R. Book 560, pages 129-131.

However, in 1974, despite the stipulation and the trial court's order, the former owners of parcel 338 purported to convey the parcel as part of a larger tract to new private owners. Thereafter, the tract was conveyed through a series of transfers, always including parcel 338. Ultimately, Mid-Peninsula obtained title to the property in 2008. It is undisputed that the 1974 conveyance was a "wild deed" and that it qualified as a root of title for purposes of MRTA.[3]

During the pendency of Mid-Peninsula's action below, DOT moved for partial summary judgment arguing that the exception to root title status as set forth in section 712.03(5) applied. That exception provides in relevant part:

> Such marketable record title shall not affect or extinguish the following rights:
>
> . . . .
>
> (5) Recorded or unrecorded easements or rights, interest or servitude in the nature of easements, rights-of-way and terminal facilities, including those of a public utility or governmental agency, so long as the same are used and the use of any part thereof shall except from operation hereof the right to the entire use thereof.

Mid-Peninsula filed a cross-motion for partial summary judgment arguing that the subsection (5) exception did not apply to a right-of-way held in fee simple. The trial

---

[3]Section 712.02 provides in relevant part that "[a]ny person having the legal capacity to own land in this state, who, alone or together with her or his predecessors in title, has been vested with any estate in land of record for [thirty] years or more, shall have a marketable record title to such estate in said land, which shall be free and clear of all claims except the matters set forth as exceptions to marketability in s. 712.03."

court agreed with Mid-Peninsula and entered summary judgment in its favor, relying on Florida Department of Transportation v. Dardashti Properties, 605 So. 2d 120 (Fla. 4th DCA 1992). In doing so, the trial court rejected DOT's argument that Clipper Bay Investments, LLC v. State, Department of Transportation, 117 So. 3d 7 (Fla. 1st DCA 2013), should control the issue.[4]

The case then proceeded to trial on DOT's alternative argument that section 712.03(3) prohibits marketable record title from extinguishing the "[r]ights of any person in possession of the lands, so long as such person is in such possession." The evidence presented at trial established that parcel 338 actually lies near the top of the bank of the canal and that DOT maintenance workers traverse in vehicles over parcel 338 in order to access the canal for purposes of maintaining both the canal and a nearby bridge. The evidence also reflected that DOT asked a company that had been storing sheds and recreational vehicles on the property to move the sheds and vehicles as the parcel belonged to DOT and DOT workers needed access to the canal. The trial court found that the evidence presented did not establish that DOT possessed parcel 338 as contemplated by the statute. Although the court noted that the statute did not define possession, the court determined that it meant "visible power, control[,] or occupancy." The trial court ultimately entered its order quieting title in the parcel to Mid-Peninsula.

---

[4]The court in Clipper Bay rejected the position taken by the Fourth District in Dardashti Properties, 117 So. 3d at 7. The Clipper Bay case is currently pending in the Florida Supreme Court. See Fla. Dep't of Transp. v. Clipper Bay Invs., LLC, SC13-775 (argued April 8, 2014).

## II. ANALYSIS

We review the trial court's construction of the statute de novo. See Tubbs v. Mechanik Nuccio Hearne & Wester, P.A., 125 So. 3d 1034, 1039 (Fla. 2d DCA 2013).

***a. The exception to MRTA set forth in section 712.03(5) does not apply.***

MRTA was created in order to simplify property transfers, clear titles, and establish certainty of ownership. See H & F Land v. Panama City-Bay Co. Airport & Indus. Dist., 736 So. 2d 1167, 1171 (Fla. 1999), receded from on different grounds by Blanton v. City of Pinellas Park, 887 So. 2d 1224 (Fla. 2004). To effectuate that purpose, section 712.02 permits the clearing of title to any property where the title has been recorded for at least thirty years and for which no statutory exception applies. Because the thirty-year period for establishing root of title in this case expired on February 5, 2004, DOT acknowledges that if no exception under section 712.03 applies, MRTA extinguishes its interest in parcel 338.

DOT argues that the exception set forth in section 712.03(5) for "[r]ecorded or unrecorded easements or rights, interest or servitude in the nature of easements, [and] rights-of-way" applies here. But nowhere in that section does it state that rights in fee ownership or other estates are excepted from MRTA. The omission of such an exception within subsection (5) is particularly notable because exceptions applicable to estates and other fee ownership interests are provided in other subsections. See, e.g., § 712.03(1), (2), & (4). But the only reference within subsection (5) to an interest is an "interest . . . in the nature of easements." And an easement is not equivalent to a fee simple estate. "When the legislature has used a term . . . in one section of the statute but omits it in another section of the same statute, [this court] will

-5-

not imply it where it has been excluded." Leisure Resorts, Inc. v. Frank J. Rooney, Inc., 654 So. 2d 911, 914 (Fla. 1995).

In concluding that the section 712.03(5) exception did not apply here, the trial court relied on Dardashti Properties wherein the Fourth District held that this statutory exception did not apply to property held in fee irrespective of whether it was used as a right-of-way. 605 So. 2d at 122-23. Thus the Fourth District holds that it is the extent of a party's claim of ownership in the property in question—rather than the use of the property—that is determinative of whether the subsection (5) exception applies.

In arguing that the trial court erred by relying on Dardashti Properties, DOT urges this court to broadly construe "rights-of-way" as did the courts in Clipper Bay and Water Control District of South Brevard v. Davidson, 638 So. 2d 521 (Fla. 5th DCA 1994). Those decisions, in turn, were predicated on City of Jacksonville v. Horn, 496 So. 2d 204, 208 (Fla. 1st DCA 1986). However, the reliance on Horn is problematic because the court there concluded, without citing to any authority, that "rights or easements once acquired for the use and benefit of the public are not easily surrendered" and thus MRTA should "be broadly construed . . . as intended to protect public rights." Horn, 486 So. 2d at 208. But that purported legislative intent is not contained within MRTA. Instead, section 712.10 provides that MRTA "shall be liberally construed to effect the legislative purpose of simplifying and facilitating land title transactions by allowing persons to rely on a record title as described in [section] 712.02 subject only to such limitations as appear in [section] 712.03." (Emphasis added.)

We do not construe MRTA as entitling governmental agencies to employ a broader construction of the term "rights-of-way" for purposes of utilizing the exception set forth in section 712.03(5). Cf. H & F Land, 736 So. 2d at 1172-73 (explaining that creation of judicial exceptions to MRTA would undermine MRTA's core purpose of providing stability to property law by requiring that all claims of interest are recorded). Nor do we agree with DOT's argument that because rights-of-way have been defined in other statutory sections as including a fee interest, the subsection (5) exception to MRTA must necessarily apply to rights-of-way held in fee. Cf. § 334.03(22), Fla. Stat. (2003) (defining rights-of-way to include land in which the department owns the fee); § 177.031(16), Fla. Stat. (2003) (defining rights-of-way as including land deeded, used, or to be used for drainage or access for ingress and egress). Those provisions come from chapters establishing DOT's responsibilities and authority and addressing land boundaries within municipalities; they have nothing to do with the reach and effect of MRTA.

Consequently, we agree with and adopt the Fourth District's position as set forth in Dardashti Properties that the exception set forth in subsection (5) does not apply to rights-of-way held in fee. We therefore certify conflict with Clipper Bay and Davidson on this issue.

**b. DOT failed to establish possession for purposes of section 712.03(3).**

Section 712.03(3) prohibits the extinguishment of "[r]ights of any person in possession of the lands, so long as such person is in such possession." We agree with the trial court that because possession is not defined within MRTA, that term must be given its plain and ordinary meaning and that the best way to accomplish that was to

resort to a dictionary definition.  See Metro. Cas. Ins. Co. v. Tepper, 2 So. 3d 209, 214 (Fla. 2009).  The trial court relied on several dictionaries to define possession as "visible power or control over something, as distinct from lawful ownership; holding or occupancy; control or occupancy."[5]

DOT asserts that its periodic use or minimal maintenance established possession.  But there was no conclusive evidence presented at trial relating to DOT's use during the relevant thirty-year MRTA period (February 1974 to February 2004).  Instead, the evidence reflected that the DOT employee who testified about DOT's need to traverse across parcel 338 to reach the canal had no personal knowledge that anyone had actually accessed parcel 338 during that period.  And although another DOT employee initially testified it would not be possible to access the canal without accessing parcel 338, she later testified it was "difficult to tell" whether the canal could be reached via another parcel.[6]

The trial court concluded that the evidence presented by DOT that its employees periodically traversed parcel 338 to access the canal was not sufficient to meet the definition of possession.  We agree with that determination.  We also agree

---

[5]See Black's Law Dictionary 1351 (10th ed. 2014) (defining possession as "having or holding property in one's power" as well as "[t]he right under which one may exercise control over something to the exclusion of all others"; also defining actual possession as "[p]hysical occupancy or control over property"); Webster's Third New International Dictionary 1770 (Philip Babcock Gove, ed., 1986) (defining possession to include "actual physical control or occupancy of property by one who holds for himself").

[6]This employee testified that she had personal knowledge that DOT had traversed across parcel 338, but she acknowledged she could not provide specific dates.

with the trial court that DOT's actions in asking a company to move sheds and vehicles from parcel 338 did not meet the definition.

DOT also asserts that its fee simple ownership is the equivalent of possession. However, "the polestar of statutory construction [is the] plain meaning of the statute at issue." Acosta v. Richter, 671 So. 2d 149, 153 (Fla. 1996). And section 712.03(3) does not reference constructive possession. If the legislature intended for the exception to apply to something other than visible occupancy possession, it would have said so. DOT's reliance on Richbourg v. Rose, 44 So. 69 (Fla. 1907), for the proposition that an owner in fee simple has constructive possession of the property does not require a different result. That case was decided many years before MRTA was enacted, and yet the legislature has not amended section 712.03(3) to include constructive possession.

Accordingly, we agree with the trial court that the exception set forth in section 712.03(3) does not apply to this case.

### III. CONCLUSION

We hold that the trial court did not err by concluding that neither of the statutory exceptions raised by DOT applied to this case and by quieting title in Mid-Peninsula's favor. We therefore affirm the judgment of the trial court.

Affirmed.


LAROSE, J., Concurs.
ALTENBERND, J., Concurs with opinion.

ALTENBERND, Judge, Concurring.

In the mid-1970s, Justice Sundberg, writing for himself, Justice Overton, and Justice England, stated: "It is inconceivable to me that a marketable record title act which is aimed primarily at quieting title to private lands can be utilized to divest the people of the State of Florida of lands held in public trust for them." Odom v. Deltona Corp., 341 So. 2d 977, 990 (Fla. 1976) (Sundberg, J., concurring in part and dissenting in part). It still seems like a questionable policy even today. Unfortunately, if DOT still needs this land, it will apparently need to take the property once again by eminent domain. I am inclined to believe that the legislature could create an exception to MRTA that would protect state-owned land from the risk of a wild deed, but none exists at this time.