WOLF, J.
Appellant, Clipper Bay Investments, LLC (Clipper Bay), challenges a portion of a final judgment in a quiet title action concerning seven acres of land in Santa Rosa County. Clipper Bay asserts the trial court erred in extinguishing only a portion of Florida Department of Transportation’s (FDOT) pre-root claim of a fee estate in the land pursuant to the Marketable Record Title Act (MRTA). FDOT asserts that the exception contained in section 712.03(5), Florida Statutes (2008), which preserves easements and rights-of-way, precluded Clipper Bay from extinguishing any portion of FDOT’s interest in the land.
FDOT cross-appeals the quiet title judgment asserting (1) no portion of FDOT’s fee estate could be extinguished by operation of MRTA because the deed Clipper Bay relied on as its root of title failed sufficiently to describe the land which was conveyed; (2) MRTA did not extinguish FDOT’s fee estate because a post-root mu-niment of title in Clipper Bay’s chain of title specifically confirmed FDOT’s estate; and (3) the exception for easements and rights-of-way under section 712.03(5) precluded any portion of FDOT’s estate from being extinguished under MRTA.
We find no merit in the first two points raised by FDOT in the cross-appeal and affirm without further discussion. In order to resolve the issue on appeal and the third issue on cross-appeal, it is necessary *9 for us to determine whether section 712.03(5) applies to FDOT’s fee estate. We find that it does, but FDOT failed to present competent, substantial evidence that its right-of-way included the land claimed by Clipper Bay. Accordingly, we reverse.
On August 7, 2008, Clipper Bay filed an action to quiet title and ejectment against FDOT and Santa Rosa County. Clipper Bay alleged it acquired the contested seven acres of land in 2006 and 2007. Clipper Bay argued that under MRTA, it was entitled to a marketable title that would extinguish any claims FDOT might have in the land if Clipper Bay could demonstrate a valid title transaction at least thirty years ago that created an estate in its predecessor in interest, also called its “root of title.” Clipper Bay alleged it traced its ownership interest back to a conveyance from Julio DeJoris to Escambia Shores, Inc., recorded on March 17, 1970. Thus, it argued this 1970 deed was its “root of title” as required by MRTA.
FDOT filed an answer and counterclaim for quiet title and ejectment. FDOT alleged the land to which Clipper Bay claimed title was a portion of what FDOT considered part of its Interstate 10 right-of-way. The land at issue does not include the land that lies under Interstate 10 or the immediately adjoining land which has been fenced off by FDOT. Instead, the disputed land lies north of the Interstate 10 fence line. FDOT acquired the land that lies under Interstate 10 and the contested seven acres that lie north of the Interstate 10 fence line through a single recorded deed from Julio DeJoris and others in 1965. FDOT also alleged that it had used a portion of the contested seven acres during the last thirty years by leasing a portion of it to Santa Rosa County for the purpose of constructing a county road. Therefore, FDOT argued, the entire parcel of land was exempt from MRTA under the right-of-way exception in section 712.03(5). At trial, FDOT entered into evidence an unrecorded FDOT right-of-way map from 1965 to demonstrate that the disputed land was part of the Interstate 10 construction project. Located on the map was a line marked “limited access right of way,” which ran across the northern portion of the disputed seven acres.
However, at trial, Clipper Bay argued FDOT’s right-of-way for Interstate 10 was the interstate and the immediately adjoining fenced area, but that it did not extend into any of the disputed land, which lies north of the Interstate 10 fence line.
After trial, the court issued an order and final judgment finding Clipper Bay established a valid root of title; however, a portion of the land was excepted from the operation of MRTA under section 712.03(5). The trial court quieted title in favor of Clipper Bay for all land “[n]orth of the limited access right of way line as shown on the unrecorded right of way map entered into evidence by DOT.” The trial court quieted title in favor of FDOT the land south of the limited access right-of-way line depicted on the unrecorded map. Further, the court awarded to Santa Rosa County fee title for the county road it built across the disputed property pursuant to its lease with FDOT.
Both Clipper Bay and FDOT argue the trial court erred in using the unrecorded map as the determining factor as to what, if any, title was extinguished under MRTA. The parties also agreed at oral argument that the heart of the dispute is whether the exception to MRTA contained in section 712.03(5) can be applied to the disputed property. Clipper Bay asserts this exception that protects easements and rights-of-way cannot be utilized to preserve land held in fee title by FDOT; thus, it is entitled to the entire seven acres. *10 Further, Clipper Bay argues that, even if the exception applies to land held in fee, FDOT’s Interstate 10 right-of-way does not include any of the disputed property, which lies north of the Interstate 10 fence line. FDOT asserts subsection (5) can be applied to the land that it holds in fee. Moreover, FDOT argues that because it acquired the disputed land as part of a larger conveyance for its Interstate 10 project, if any portion of that unified parcel is utilized as a right-of-way, the exception applies to the entire parcel. FDOT argues its construction of Interstate 10 on the land adjacent to the disputed seven acres, and its leasing a portion of the contested seven acres to Santa Rosa County, was sufficient use to except the seven acres from MRTA.
Specifically, Clipper Bay argues the trial court erred by (1) failing .to apply the interpretive principles that guide the construction and application of MRTA; (2) failing to acknowledge that the plain language of section 712.03(5) does not apply to fee estates; (3) misconstruing FDOT v. Dardashti 605 So.2d 120 (Fla. 4th DCA 1992), and Water Control District of South Brevard v. Davidson, 638 So.2d 521 (Fla. 5th DCA 1994); (4) awarding a portion of the land to FDOT despite its failure to present competent, substantial evidence that any of the land at issue was part of its Interstate 10 right-of-way; and (5) imposing an additional burden on Clipper Bay and its predecessors to conduct an extra-record investigation not required by MRTA.

1. Interpreting MRTA

MRTA provides for a clear, marketable title for any landowner who can demonstrate that a title transaction which occurred at least thirty years ago created an estate in either the current landowner or the predecessor in interest:
Any person having the legal capacity to own land in this state, who, alone or together with her or his predecessors in title, has been vested with any estate in land of record for 30 years or more, shall have a marketable record title to such estate in said land, which shall be free and clear of all claims except the matters set forth as exceptions to marketability in s.712.03. A person shall have a marketable record title when the public records disclosed a record title transaction affecting the title to the land which has been of record for not less than 30 years purporting to create such estate either in:
(1) The person claiming such estate; or (2) Some other person from whom, by one or more title transactions, such estate has passed to the person claiming such estate, with nothing appearing of record, in either case, purporting to divest such claimant of the estate claimed.
§ 712.02, Fla. Stat. (2008). MRTA refers to that title transaction thirty years prior as the “root of title.” § 712.01(2), Fla. Stat. (2008). Further, MRTA states that its provisions should be liberally construed:
This law shall be liberally construed to effect the legislative purpose of simplifying and facilitating land title transactions by allowing persons to rely on a record title as described in s.712.02 subject only to such limitations as appear in s.712.03.
§ 712.10, Fla. Stat. (2008). Thus, under MRTA “ ‘any claim or interest, vested or contingent, present or future, is cut off unless the claimant preserves his claim by filing a notice within a 30-year period. If a notice is not filed, the claim is lost.’ ” H & F Land, Inc. v. Panama City-Bay County Airport & Indus. Dist., 736 So.2d 1167, 1171 (Fla.1999), receded from on other grounds by Blanton v. City of Pinellas *11 Park, 887 So.2d 1224 (Fla.2004) (quoting Marshall v. Hollywood, Inc., 236 So.2d 114 (Fla.1970)).
The supreme court further discussed the intent of MRTA in H & F Land, explaining “MRTA’s provisions contain a scheme to accomplish the same objective [as the model act] of stabilizing property law by clearing old defects from land titles, limiting the period of record search, and clearly defining marketability by extinguishing old interests of record not specifically claimed or reserved.” Id. at 1171. Further, “A core concern of MRTA was that there be no ‘hidden’ interests in property that could be asserted without limitation against a record property owner. In other words, MRTA shifted the burden to those claiming ‘any claim or interest’ in property to come forward in a timely fashion and assert that interest publicly.” Id. at 1172. “Creating judicial exceptions to this comprehensive legislative scheme would undermine the core purpose of MRTA of providing stability to property law by requiring that all claims to an interest in property be recorded.” Id. at 1172-73.

2. Exceptions to Marketability Under section 712.03(5), Florida Statutes

Clipper Bay argues the trial court correctly found it established a valid root of title, entitling it to a marketable title under MRTA. However, Clipper Bay argues the trial court erred in finding a portion of FDOT’s fee estate was excepted from MRTA under section 712.03(5), which preserves pre-root easements and rights-of-way. Section 712.03(5) states:
712.03. Exceptions to marketability Such marketable record title shall not affect or extinguish the following rights:
(5) Recorded or unrecorded easements or rights, interest or servitude in the nature of easements, rights-of-way and terminal facilities, including those of a public utility or of a governmental agency, so long as the same are used and the use of any part thereof shall except from the operation hereof the right to the entire use thereof. No notice need be filed in order to preserve the lien of any mortgage or deed of trust or any supplement thereto encumbering any such recorded or unrecorded easements, or rights, interest, or servitude in the nature of easements, rights-of-way, and terminal facilities. However, nothing herein shall be construed as preserving to the mortgagee or grantee of any such mortgage or deed of trust or any supplement thereto any greater rights than the rights of the mortgagor or grantor.
§ 712.03, Fla. Stat. (emphasis added).
Clipper Bay argues that the plain language of subsection (5) pertains to easements and rights-of-way, not fee estates. Clipper Bay notes that “easement” and “right-of-way” are not defined by section 712.03. However, “absent a statutory definition, words should be given their plain and ordinary meaning, and one looks to the dictionary for the plain and ordinary meaning of words.” Suddath Van Lines, Inc. v. State, Dep’t of Envtl. Protection, 668 So.2d 209, 212 (Fla. 1st DCA 1996).
Clipper Bay relies on Black’s Law Dictionary, which defines an “easement” as “An interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose (such as to cross it for access to a public road).... The primary recognized easements are (1) a right-of-way ....” Black’s Law Dictionary (9th ed.2009) (emphasis added). Further, Black’s defines a “right-of-way” as the “right to pass through property owned *12 by another,” the “right to build and operate a railway line or a highway on land belonging to another,” and the “strip of land subject to a nonowner’s right to pass through.” Black’s Law Dictionary (9th ed.2009) (emphasis added).
In response, FDOT agrees that MRTA does not define right-of-way or easement but notes the Florida Transportation Code, section 334.08(22), defines “[r]ight-of-way” as “land in which the state, the department, a county, or a municipality owns the fee or has an easement devoted to or required for use as a transportation facility.” § 334.03(22), Fla. Stat. (2008) (emphasis added). FDOT argues the dictionary definition should only be referenced if there is no statute that defines the word at issue, relying on Reform Party of Florida v. Black, 885 So.2d 303, 312 (Fla.2004), in which the supreme court interpreted a term not defined by statute:
The term “national party” is not defined in section 103.021(4)(a) or in any other Florida legal authority. Where there is uncertainty in the meaning to be given the words employed in a statute, “the Court must resort to canons of statutory construction in order to derive the proper meaning.” Seagrave v. State, 802 So.2d 281, 286 (Fla.2001). Further, this Court explained that
[o]ne of the most fundamental tenets of statutory construction requires that we give statutory language its plain and ordinary meaning, unless words are defined in the statute or by the clear intent of the legislature. When necessary, the plain and ordinary meaning of words can be ascertained by reference to a dictionary.
Nehme v. Smithkline Beecham Clinical Labs., Inc., 863 So.2d 201, 204-05 (Fla. 2003) (citations and quotation marks omitted). (Emphasis added). FDOT argues that if any other statute had defined the term at issue, the supreme court would have deferred to that definition rather than consulting the dictionary.
FDOT also argues that interpreting section 712.03(5) to protect only easements and rights-of-way rather than the larger possessory interests in land owned in fee is unreasonable and conflicts with the statement from this court that “[t]he statute should be broadly construed, accordingly, as intended to protect public rights to the extent permissible under our organic law.” City of Jacksonville v. Horn, 496 So.2d 204, 208 (Fla. 1st DCA 1986).

3. Dardashti, Davidson, and Horn

Two cases discuss the issue of whether the exception in section 712.03(5) can apply to land held in fee title: Florida Department of Transportation v. Dardashti, 605 So.2d 120 (Fla. 4th DCA 1992), and Water Control District of South Brevard v. Davidson, 638 So.2d 521 (Fla. 5th DCA 1994).
In Dardashti, the piece of land in dispute had been conveyed to Palm Beach County for “ ‘right of way and easement in and over’ ” a fifty-foot parcel of land through a deed recorded in 1917. 605 So.2d at 121. Palm Beach County later deeded its interest in the land to FDOT. Id. Dardashti subsequently claimed an eleven-foot strip of this land by operation of MRTA. Id. at 122. However, FDOT claimed that the section 712.03(5) exception applied to defeat the MRTA claim. Id.
The Fourth District rejected FDOT’s claim that it fell under this exception to MRTA, finding:
the 1917 deed did not create an easement or right-of-way. Although the 1917 deed labeled the fifty foot parcel as a “right of way and easement,” those words merely described the purpose for *13 the conveyance. See Robb v. Atlantic Coast Line R.R. Co., 117 So.2d 584, 537 (Fla. 2d DCA 1960) (“fee [title] will pass by deed containing a clause or recital which is merely declaratory of the use contemplated of the land.”). Although the 1917 deed provided that the land would revert if not used as a public highway, that provision merely created a covenant of the deed. Id. at 535-36. Whatever one chooses to call it, an ownership interest, a right-of-way in fee, or a determinable fee interest, we hold that the County received fee title to the fifty foot parcel.
Dardashti, 605 So.2d at 122. Thus, the court concluded, “[b]ecause the County did not have an easement or right-of-way over the fifty foot parcel, section 712.03(5) would not apply.” Id. at 123. In other words, the easement or rights-of-way exception would not apply to land acquired in fee.
The Davidson case addressed a similar issue, although the opinion is somewhat confusing. In that case, the Fifth District considered a quiet title action filed by several individual property owners concerning property that the Water Control District of South Brevard County (District) also claimed to own in fee. 638 So.2d at 522. The trial court found the District never obtained legal title to the disputed property. Id. However, the trial court “recognized the District’s rights-of-way to the canal and an area to the immediate east of the canal, which had been utilized by the District for maintenance of the canal,” but not the west side of the canal. Id.
The Fifth District reversed concerning the west side of the canal. Id. The court revisited the factual history of the land transfer and found the District had properly acquired title to the disputed property, specifically finding that title to the property vested in the District by operation of law. Id. at 523. However, because the individual property owners argued MRTA applied, the court had to determine whether the District properly preserved its property rights over the years. Id. at 525.
The Fifth District examined the chain of title of the individual property owners for any reservations. Id. For some of the parcels, the court concluded the root of title and all deeds since contained specific “reservations in favor of the District.” Id. at 526. The deeds stated they were “‘[s]ubject to rights of way for public roads and canals of the [District].’ ” Id. at 526. Another parcel did not contain a reservation of the District’s interests in the root of title; however, a pre-root document did contain a “reservation for the canal easements in favor of the District.” Id.
The court found section 712.03(5) excludes from MRTA “ ‘[Recorded or unrecorded easements or ... rights-of-way and terminal facilities, including those of a public utility or of a governmental agency, so long as the same are used and the use of any part thereof shall except from the operation hereof the right to the entire use thereof.’ ” Id. at 526 (emphasis added). Thus, the court concluded:
Since the District is a political subdivision of the State of Florida, the District’s rights-of-way have not been extinguished under Florida law if at least part of the easement has been used. § 712.03(5), Fla. Stat. (1991). Rights or easements acquired for the use and benefit of the public are not easily lost or surrendered, and MRTA should be broadly construed to protect these rights to the extent possible under the law. City of Jacksonville v. Horn, 496 So.2d 204 (Fla. 1st DCA 1986).
Id. at 526.
The Fifth District found it was undisputed that the District maintained the right- *14 of-way along the eastern side of the canal. Id. Further, the court found “the original reservation and all subsequent reservations” in the individual property owners’ chain of title “refer to the canals and rights-of-way as one, not as two separate rights-of-way to each canal.” Id. at 526. The court determined that “[s]ince the easements constitute a unified reservation, use of a part preserves the whole. § 712.08(5), Fla. Stat. Hence, the rights-of-way have not been extinguished under MRTA. See Fla. Dep’t of Transp. v. Dardashti Props., 605 So.2d 120 (Fla. 4th DCA 1992), rev. denied, 617 So.2d 318 (Fla. 1993).” Id. at 526-27.
Dardashti directly stands for the proposition that the exception in section 712.03(5) cannot apply to land held in fee by the government. Davidson, on the other hand, is confusing because it applies the section 712.03(5) exception to land held in fee by a governmental entity; however, the court also appears to rely on reservation language contained in deeds to the private property owners. It is also unclear why Davidson cites to Dardashti in upholding the governmental interest where the Dardashti case denied the government’s claim that the 712.03(5) exception applied to land held in fee title.
Both sides in this dispute also rely on our decision in Horn, 496 So.2d 204. The holding in that case, however, is of little use in analyzing this case. Horn differs in two important respects: (1) there is no indication that the governmental entity had fee title to the property in question; and (2) the ultimate decision was based on the failure of the governmental unit to use any portion of the property for right-of-way purposes. In the instant case, it is undisputed that FDOT claimed fee title and utilized a portion of the original land conveyance for right-of-way purposes.
Horn, however, does confront the problem facing this court, which is to reconcile the language in section 712.10 mandating the liberal construction of MRTA with the section 712.03(5) exception, along with the public policy “that rights or easements once acquired for the use and benefit of the public are not easily lost or surrendered.” 496 So.2d at 208.
A Application of Section 712.03(5), Florida Statutes
We determine that section 712.03(5) is ambiguous as to whether it can be applied to protect the public rights of land held in fee. This ambiguity is evidenced by the apparently conflicting decisions of the Fourth District in Dardashti and the Fifth District in Davidson. It is, therefore, necessary for us to construe the statutory exception.
The clear impart of section 712.03(5) is to protect land utilized for easements or rights-of-way. This is consistent with the public policy identified in Horn “that rights or easements once acquired for the use and benefit of the public are not easily lost or surrendered.” 496 So.2d at 208.
The focus, therefore, is the reason or purpose that the state holds the land in question rather than the manner in which the title is actually held. Thus, it would make no sense to say that land which is being utilized for rights-of-way and easements without any claim of fee title would be protected from the operation of MRTA while the same land utilized for the same purpose held in fee title would be subject to total forfeiture pursuant to MRTA. For instance, the original conveyance to FDOT of the fee title in the instant case included the land presently lying beneath Interstate 10. While appellant is not claiming this land, if the exception in section 712.03(5) did not apply to land held in fee, then this land would be potentially subject to forfeiture pursuant to MRTA. *15 Clearly, this could not be the legislative intent.
Further, the definition in section 334.03(22) of “right-of-way” to include land held in fee is important for three reasons: (1) it is legislative recognition that land utilized for right-of-way by the government may be held in fee title; (2) it indicates that many governmental rights-of-way may be held in fee title; and (3) it provides a definition that is lacking in section 712.03(5).
Clipper Bay argues that section 334.03 applies only “when used in the transportation code.” We reject the contention that we cannot consider this section. First, the language in section 334.03 does not use the word “only.” It states, “[w]hen used in the Florida Transportation Code, the term: ‘Right-of-way’ means.... ” § 334.03(22), Fla. Stat. We do not read the language about utilizing the definition within the transportation code to mean it cannot provide guidance when interpreting other portions of the statutes or that it will not have import for issues related to the subject of the transportation code. The effect of other statutory provisions on the ability of FDOT to maintain title to its rights-of-way is just such a situation.
We, therefore, reject the proposition that section 712.03(5) cannot be applied to rights-of-way held by FDOT in fee.

5. The Extent of FDOT’s Right-of-way

Having determined that section 712.03(5) can apply to protect rights-of-way held in fee, we must consider whether FDOT demonstrated the land at issue was a part of its Interstate 10 right-of-way. As discussed above, section 334.03(22) limits the definition of right-of-way to land “devoted to or required for use as a transportation facility.” Further, section 712.03(5) states “the use of any part” of a right-of-way “shall except from the operation hereof the right to the entire use thereof.” However, upon review of the record, we find FDOT failed to present competent, substantial evidence that the land at issue was ever devoted to or required for part of its Interstate 10 right-of-way.
Below, FDOT’s witness testified that FDOT considered the entire parcel to be for the purpose of the Interstate 10 project, and that all of the land owned by FDOT was for the purpose of right-of-way. However, in its opinion, the trial court rejected this assertion, and rightly so. Such broad, generalized testimony does not constitute evidence that the land at issue was ever “devoted to or required for” right-of-way purposes. § 334.03(22), Fla. Stat. We reject FDOT’s argument that any land purchased in conjunction with a roadway project or any land owned by FDOT will automatically be protected as right-of-way under MRTA.
Here, it was uncontested that the land at issue had not been used by FDOT since Clipper Bay’s predecessors in interest obtained title in 1970. Further, FDOT failed to present any evidence that the land at issue was ever “devoted to or required for use as a transportation facility,” or that the land would be utilized for right-of-way purposes in the reasonably foreseeable future. FDOT entered into evidence its unrecorded 1965 right-of-way map that depicted a “limited access right of way” line located north of the Interstate 10 fence line, across the disputed seven acres. However, FDOT failed to present any testimony explaining the import of this map, or whether the land was actually utilized in the manner depicted by the map. Moreover, we note there was evidence presented that FDOT leased a part of the contested land to Santa Rosa County for the construction of a county road. While this evidence may support the county road being subject to the exception, it does not *16 support FDOT’s argument that the rest of the land was part of its Interstate 10 right-of-way.
The only other evidence presented on this issue was the testimony of Clipper Bay’s expert witness, who testified the Interstate 10 fence line had been widely accepted as FDOT’s right-of-way line since prior to 1970. Additionally, Clipper Bay’s predecessor in interest testified he contacted FDOT concerning the location of its right-of-way line, and FDOT insisted its right-of-way line was the Interstate 10 fence line. Therefore, the trial court’s finding that a portion of the land at issue was part of FDOT’s Interstate 10 right-of-way, and therefore excepted from MRTA, was not supported by competent, substantial evidence.
Moreover, Clipper Bay argues the trial court improperly relied on the unrecorded right-of-way map, kept at an FDOT office in Chipley several counties away, to create an additional burden on Clipper Bay to search for unrecorded property records that predated its root of title. It argues the trial court’s finding that “Clipper Bay and its predecessors ... should have diligently searched the records including the unrecorded right-of-way map ...” violated the principle expressed by the Florida Supreme Court that “a core concern of MRTA was that there be no hidden interests in property that could be asserted without limitation against a record property owner.” H & F Land, 736 So.2d at 1172. We agree.

Conclusion

In conclusion, we hold section 712.03(5) applies to land held in fee for the purpose of right-of-way. However, here FDOT failed to present competent, substantial evidence that the land at issue, which lies north of the Interstate 10 fence line, was held for the purpose of right-of-way. Therefore, we reverse the portion of the trial court’s order that quieted title to a portion of the land north of the Interstate 10 fence line in FDOT, and we remand for entry of an order quieting title to all of the land at issue in Clipper Bay, with the exception of the land utilized by Santa Rosa County to construct a road. We affirm the portion of the trial court’s order that awarded to Santa Rosa County the road that it constructed and maintained.
AFFIRMED in part, REVERSED in part, and REMANDED.
VAN NORTWICK and LEWIS, JJ„ concur.