PERRY, J.
The Florida Department of Transportation seeks review of the decision of the First District Court of Appeal in Clipper Bay Investments, LLC v. State Department of Transportation, 117 So.3d 7 (Fla. 1st DCA 2013), on the ground that it expressly and directly conflicts with Florida Department of Transportation v. Dardashti Properties, 605 So.2d 120 (Fla. 4th DCA 1992), on whether exceptions to the Florida Marketable Record Title Act may apply to an estate held in fee by the Florida Department of Transportation. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.
OVERVIEW
Clipper Bay Investments, LLC (Clipper Bay) sought to quiet title to a portion of land adjacent to Interstate 10 (1-10) in Santa Rosa County under the Marketable Record Title Act (MRTA). The Florida Department of Transportation (DOT) claimed a fee estate for the purpose of establishing a right-of-way, and argued that, as such, the property was exempt from the MRTA under section 712.03, Florida Statutes (2008). The trial court extinguished a portion of DOT’S estate but not the entire disputed area, and Clipper Bay appealed. The First District Court of Appeal found that DOT failed to present competent, substantial evidence that it maintained a right-of-way and reversed the trial court’s final judgment.
Before this Court, the parties now agree that the exceptions provided in section 712.03 may apply to rights-of-way held in fee. Accordingly, we affirm that portion of the First District’s opinion and disapprove of the conflicting portion of the Fourth District’s decision in Dardashti Additionally, because the plain language of the statute provides that use of any part of the estate shall exempt the whole, and it is undisputed that DOT has leased another portion to Santa Rosa County on which it maintains a county road, we find that the First District erred in finding that DOT failed to provide competent, substantial evidence to support its claim. Accordingly, we quash the First District’s decision with instructions to remand to the trial court for issuance of an order denying Clipper Bay’s action to quiet title and awarding the disputed property to DOT.
STATEMENT OF THE CASE AND FACTS
The First District Court of Appeal summarized the case and underlying facts as follows:
... Clipper Bay Investments, LLC (Clipper-Bay), challenges a portion of a final judgment in a quiet title action concerning seven acres of land in Santa Rosa County. Clipper Bay asserts the trial court erred in extinguishing only a portion of Florida Department of Transportation’s (FDOT) pre-root claim of a fee estate in the land pursuant to the Marketable Record Title Act (MRTA). FDOT asserts that the exception contained in section 712.03(5), Florida Statutes (2008), which preserves easements and rights-of-way, precluded Clipper Bay from extinguishing any portion of FDOT’s interest in the land.
FDOT cross-appeals the quiet title judgment asserting (1) no portion of FDOT’s fee estate could be extinguished *861 by operation of MRTA because the deed Clipper Bay relied on as its root of title failed sufficiently to describe the land which was conveyed; (2) MRTA did not extinguish FDOT’s fee estate because a post-root muniment of title in Clipper Bay’s chain of title specifically confirmed FDOT’s estate; and (S) the exception for easements and rights-of-way under section 712.03(5) precluded any portion of FDOT’s estate from being extinguished under MRTA.
[[Image here]]
On August 7, 2008, Clipper Bay filed an action to quiet title and ejectment against FDOT and Santa Rosa County. Clipper Bay alleged it acquired the contested seven acres of land in 2006 and 2007. Clipper Bay argued that under MRTA, it was entitled to a marketable title that would extinguish any claims FDOT might have in the land if Clipper Bay could demonstrate a valid title transaction at least thirty years ago that created an estate in its predecessor in interest, also called its “root of title.” Clipper Bay alleged it traced its ownership interest back to a conveyance from Julio DeJoris to Escambia Shores, Inc., recorded on March 17, 1970. Thus, it argued this 1970 deed was its “root of title” as required by MRTA.
FDOT filed an answer and counterclaim for quiet title and ejectment. FDOT alleged the land to which Clipper Bay claimed title was a portion of what FDOT considered part of its Interstate 10 right-of-way. The land at issue does not include the land that lies under Interstate 10 or the immediately adjoining land which has been fenced off by FDOT. Instead, the disputed land lies north of the Interstate 10 fence line. FDOT acquired the land that lies under Interstate 10 and the contested seven acres that lie north of the Interstate 10 fence line through a single recorded deed from Julio DeJoris and others in 1965. FDOT also alleged that it had used • a portion of the contested seven acres during the last thirty years by leasing a portion of it to Santa Rosa County for the purpose of constructing a county road. Therefore, FDOT argued, the entire parcel of land was exempt from MRTA under the right-of-way exception in section 712.03(5). At trial, FDOT entered into evidence an unrecorded FDOT right-of-way map from 1965 to demonstrate that the disputed land was part of the Interstate 10 construction project. Located on the map was a line marked “limited access right of way,” which ran across the northern portion of the disputed seven acres.
However, at trial, Clipper Bay argued FDOT’s right-of-way for Interstate 10 was the interstate and the immediately adjoining fenced area, but that it did not extend into any of the disputed land, which lies north of the Interstate 10 fence line.
After trial, the court issued an order and final judgment finding Clipper Bay established a valid root of title; however, a portion of the land was excepted from the operation of MRTA under section 712.03(5). The trial court quieted title in favor of Clipper Bay for all land “[njorth of the limited access right of way line as shown on the unrecorded right of way map entered into evidence by DOT.” The trial court quieted title in favor of FDOT the land south of the limited access right-of-way line depicted on the unrecorded map. Further, the court awarded to Santa Rosa County fee title for the county road it built across the disputed property pursuant to its lease with FDOT.
Clipper Bay, 117 So.3d at 8-10. The First District reversed, holding:
*862 We find no merit in the first two points raised by FDOT in the cross-appeal and affirm without further discussion. In order to resolve the issue on appeal and the third issue on cross-appeal, it is necessary for us to determine whether section 712.03(5) applies to FDOT’s fee estate. We find that it does, but FDOT failed to present competent, substantial evidence that its right-of-way included the land claimed by Clipper Bay.
Id. at 8-9.
DISCUSSION
The issue in this case is whether the Circuit Court of the First Judicial Circuit in and for Santa Rosa County and the First District Court of Appeal properly applied the exception provided in section 712.03, Florida Statutes, to the land held in fee by DOT. The circuit court partially granted Clipper Bay’s petition to quiet title and awarded exclusive use of the property north of DOT’S right-of-way line to Clipper Bay. However, the First District reversed the trial court’s judgment, holding that while the land being held in fee is not the dispositive issue, DOT had failed to show competent, substantial evidence that it maintained the right-of-way. While there is no dispute that DOT held the land in fee, the First District held that DOT did not provide sufficient evidence that the land was held to secure a right-of-way and therefore did not qualify for the statutory exception to marketable record title. Specifically, the First District held that DOT “failed to present competent, substantial evidence that the land at issue was ever devoted to or required for part of its Interstate 10 right-of-way.” Id. at 15. We agree with the First District that the form of title is not dispositive, but also find that the plain language of subsections 712.03(1) and (5) requires finding DOT’s entire fee estate excepted from the MRTA because the undisputed facts demonstrate that DOT used part of its estate for a lease to Santa Rosa County to maintain a county road.
Standard of Review
The issue presents a question of statutory interpretation, which is properly reviewed de novo. Reeves v. State, 957 So.2d 625, 629 (Fla.2007).
As in all cases of statutory construction, we first look to the language of the statute. See Woodham v. Blue Cross & Blue Shield of Florida, Inc., 829 So.2d 891, 897 (Fla.2002). “When the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.” Modder v. American Nat’l Life Ins. Co., 688 So.2d 330, 333 (Fla.1997) (quoting Holly v. Auld, 450 So.2d 217, 219 (Fla.1984)). It is only if the statutory language is ambiguous that “the Court must resort to traditional rules of statutory construction to determine legislative intent.” Palm Beach County Canvassing Bd. v. Harris, 772 So.2d 1273, 1282 (Fla.2000); see also Joshua v. City of Gainesville, 768 So.2d 432, 435 (Fla.2000) (stating that “if the language of the statute is unclear, then rules of statutory construction control”). “Ambiguity suggests that reasonable persons can find different meanings in the same language.” Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla.1992).
Blanton v. City of Pinellas Park, 887 So.2d 1224, 1230 (Fla.2004).
Marketable Record Title Act
The “MRTA was enacted in 1963 to simplify and facilitate land transactions *863 and specifically provides that its provisions are to be construed liberally.” Id. at 1227 (citing § 712.10, Fla. Stat. (2003)). It states:
Any person having the legal capacity to own land in this state, who, alone or together with her or his predecessors in title, has been vested with any estate in land of record for 30 years or more, shall have a marketable record title to such estate in said land, which shall be free and clear of all claims except the matters set forth as exceptions to marketability in s. 712.03. A person shall have a marketable record title when the public records disclosed a record title transaction affecting the title to the land which has been of record for not less than 30 years purporting to create such estate either in:
(1) The person claiming such estate; or
(2) Some other person from whom, by one or more title transactions, such estate has passed to the person claiming such estate, with nothing appearing of record, in either case, purporting to divest such claimant of the estate claimed.
§ 712.02, Fla. Stat.
“[The MRTA] eliminates all stale claims to real property, with certain enumerated exceptions, unless notice of these claims is filed in a procedurally proper manner.” City of Jacksonville v. Horn, 496 So.2d 204, 206 (Fla. 1st DCA 1986) (citing City of Miami v. St. Joe Paper Co., 364 So.2d 439 (Fla.1978)).
The Marketable Record Title Act is a comprehensive plan for reform in conveyancing procedures. It is a curative act in that it may operate to correct certain defects which have arisen in the execution of instruments in the chain of title. Curative statutes reach back on past events to correct errors or irregularities and to render valid and effective attempted acts which would be otherwise ineffective for the purpose the parties intended. They operate to complete a transaction which the parties intended to accomplish but carried out imperfectly-
St. Joe Paper Co., 364 So.2d at 442.
Subject to section 712.03, a marketable record title is free and clear of all estates, interests, claims, or charges, the existence of which depends upon any act, title transaction, event, or omission that occurred before the effective date of the root of title. § 712.03, Fla. Stat. Clipper Bay claims as its root of title[1] a warranty deed from Julio and Sue DeJoris to Escambia Shores, Inc., recorded March 17, 1970. Clipper Bay’s root of title provides it with marketability unless DOT can demonstrate an exception.
Exceptions to the MRTA
The only exceptions to the MRTA are provided in section 712.03. Relevant to our decision are subsections (1) and (5), which state:
Such marketable record title shall not affect or extinguish the following rights:
(1) Estates or interests, easements and use restrictions disclosed by and defects inherent in the muniments of title on which said estate is based beginning with the root of title; provided, however, that a general reference in any of such muniments to easements, use restrictions or other interests created *864 prior to the root of title shall not be sufficient to preserve them unless specific identification by reference to book and page of record or by name of recorded plat be made therein to a recorded title transaction which imposed, transferred or continued such easement, use restrictions or other interests; subject, however, to the provisions of subsection (5).
[[Image here]]
(5) Recorded or unrecorded easements or rights, interest or servitude in the nature of easements, rights-of-way and terminal facilities, including those of a public utility or of a governmental agency, so long as the same are used and the use of any part thereof shall except from the operation hereof the right to the entire use thereof. No notice need be filed in order to preserve the lien of any mortgage or deed of trust or any supplement thereto encumbering any such recorded or unrecorded easements, or rights, interest, or servitude in the nature of easements, rights-of-way, and terminal facilities. However, nothing herein shall be construed as preserving to the mortgagee or grantee of any such mortgage or deed of trust or any supplement thereto any greater rights than the rights of the mortgagor or grantor.
[[Image here]]
§ 712.03, Fla. Stat.
Conflict
DOT contends that the First District’s decision in Clipper Bay expressly and directly conflicts with the Fourth District’s decision in Dardashti .Properties, wherein the Fourth District Court of Appeal held that a conveyance of land in fee to DOT did not create a right-of-way and that because a right-of-way did not exist, no exception to marketability of record title existed. The dispute was over an eleven-foot strip of land in Palm Beach County near the Florida Turnpike. In 1917, Model Land Company conveyed a “right of way and easement in and over” the north fifty feet of section 26 to Palm Beach County for use as a public highway, and provided that if the land ceased to be used, it converted back to Model Land or its successors. In 1956, Palm Beach County recorded a right-of-way map that showed a right-of-way over the north thirty-nine feet and conveyed the same thirty-nine feet to the State Road Department (a predecessor to DOT). Through several conveyances, the eleven-foot strip left behind was conveyed to Conrad Schaefer, who paid property taxes on the strip. Schaefer then conveyed his land to Dar-dashti in 1979, and Dardashti paid property taxes on the land. In 1989, Palm Beach County conveyed the entire fifty-foot parcel to DOT who constructed improvements over the eleven-foot strip.
At the conclusion of a non-jury trial, the trial judge found that section 712.03(5) did not extend an exception to an “estate” and thus did not apply to a right-of-way in fee. The Fourth District held, as did the trial judge, that “the 1917 deed did not create an easement or right-of-way.” Dardashti, 605 So.2d at 122. Specifically, the Fourth District reasoned that “[ajlthough the 1917 deed labeled the fifty foot parcel as a ‘right of way and easement,’ those words merely described the purpose for the conveyance.” Id. (citation omitted). The court continued, stating that “[ajlthough the 1917 deed provided that the land would revert if not used as a public highway, that provision merely created a covenant of the deed. Whatever one chooses to call it, an ownership interest, a right-of-way in fee, or a determinable fee interest, we hold that the County received fee title to the fifty foot parcel.” Id. (citation omitted). We disapprove of the Fourth District’s holding and approve the First District’s reasoning that *865 rights-of-way are protected by the statute no matter how they are created.
The land at issue here was obtained by DOT in a 1965 conveyance as part of its I-10 project. The First District stated, “it is undisputed that FDOT claimed fee title and utilized a portion of the original land conveyance for right-of-way purposes.” Clipper Bay, 117 So.3d at 14. The First District noted, “FDOT acquired the land that lies under Interstate 10 and the contested seven acres that lie north of the Interstate 10 fence line through a single recorded deed from Julio DeJoris and others in 1965.” Id. at 9. Applying the definition of “right-of-way” contained in section 334.03(22), Florida Statutes (2008), the First District rejected Clipper Bay’s assertion that “section 712.03(5) cannot be applied to rights-of-way held by FDOT in fee.” Clipper Bay, 117 So.3d at 15. We agree.
At the time of the MRTA’s enactment, “right-of-way” was not defined in the Act. However, it was defined in the transportation code. In section 334.02(22), “right-of-way” was defined as “land in which the state, the department, a county, or a municipality owns the fee or has an easement devoted to or required for use as a transportation facility.” § 334.02, Fla. Stat. (1963), repealed by Laws of Fla. 1984 c. 84-309, § 7. Accordingly, the definition encompassed land held in fee. The First District therefore correctly determined that “[t]he focus ... is the reason or purpose that the state holds the land in question rather than the manner in which the title is actually held.” Clipper Bay, 117 So.3d at 14. We consequently turn to the question of whether DOT’s fee estate qualifies for exception from the MRTA.
Application of the Exceptions
A marketable record title that is established under section 712.03, Florida Statutes, does not affect or extinguish:
(1) Estates or interests, easements and use restrictions disclosed by and defects inherent in the muniments of title on which said estate is based beginning with the root of title; provided, however, that a general reference in any of such muniments to easements, use restrictions or other interests created prior to the root of title shall not be sufficient to preserve them unless specific identification by reference to book and page of record or by name of recorded plat be made therein to a recorded title transaction which imposed, transferred or continued such easement, use restrictions or other interests; subject, however, to the provisions of subsection (5).
§ 712.03, Fla. Stat. To apply this exception to marketability, DOT must establish that the instrument provided to invoke the exception is a muniment[2] of title that specifically references a pre-root conveyance.
In Sunshine Vistas Homeowners Ass’n v. Caruana, 623 So.2d 490 (Fla.1993), we considered the following certified question:
WHETHER THE FLORIDA MARKETABLE RECORD TITLE ACT HAS THE EFFECT OF EXTINGUISHING A PLAT RESTRICTION WHICH WAS CREATED PRIOR TO THE ROOT OF TITLE WHERE THE MUNIMENTS OF TITLE IN THE CHAIN OF TITLE DESCRIBE THE PROPERTY BY ITS LEGAL DESCRIPTION WHICH MAKES REF *866 ERENCE TO THE PLAT AND THE MUNIMENTS OF TITLE STATE THAT THE CONVEYANCE IS GIVEN SUBJECT TO COVENANTS AND RESTRICTIONS OF RECORD.
Id. at 491 (citing Sunshine Vistas Homeowners Ass’n v. Caruana, 597 So.2d 809, 811 (Fla. 3d DCA 1992)) (footnotes omitted). Citing the Act, we stated that “a thirty-one-year-old restriction is preserved if the root of title or a subsequent muniment contains a ‘specific identification’ to a recorded title transaction that imposed, transferred, or continued the restriction.” Sunshine Vistas, 623 So.2d at 491 (citing § 712.03(1), Fla. Stat.). We then provided two methods of making the specific identification: “(1) by reference to the book and page in the public records where the title transaction that imposed the restriction can be found, or (2) by reference to the name of a recorded plat that imposed the restriction.” Id. at 491-92. In Sunshine Vistas, the root of title and two subsequent deeds referred specifically to the “Sunshine Vistas, according to the Plat thereof, recorded in Plat Book 16, at page 29.” Id. at 492. Further, each of the deeds also conveyed property subject to covenants and restrictions of record. Id.
Applying the test provided in Sunshine Vistas, we find that DOT has established a subsequent muniment that contains a specific identification to its interest in the disputed property in the lease to Santa Rosa County, recorded on December 7, 1987, at Book 920, Page 06 of the Santa Rosa County Records, and specifically references DOT’s property interest sufficiently to provide notice to Clipper Bay.[3] Accordingly, we find that DOT’s interest is preserved and excepted under section 712.03(1).
*867 Additionally, because the lease conveys a portion of the property, we find that the remaining area in dispute is protected by the exception in subsection (5), which provides:
Recorded or unrecorded easements or rights, interest or servitude in the nature of easements, rights-of-way and terminal facilities, including those of a public utility or of a governmental agency, so long as the same are used and the me of any part thereof shall except from the operation hereof the right to the entire use thereof No notice need be filed in order to preserve the lien of any mortgage or deed of trust or any supplement thereto encumbering any such recorded or unrecorded easements, or rights, interest, or servitude in the nature of easements, rights-of-way, and terminal facilities. However, nothing herein shall be construed as preserving to the mortgagee or grantee of any such mortgage or deed of trust or any supplement thereto any greater rights than the rights of the mortgagor or grantor.
§ 712.08(5), Fla. Stat. (emphasis added). As stated in the relevant portion of subsection (5), “the use of any part thereof shall except from the operation hereof the right to the entire use thereof.” Accordingly, because the land described is included in DOT’S title, use of any part of it as a right-of-way excludes the remainder from the effect of the MRTA. In the instant case, DOT’S fee estate was used, in part, to build I — 10; it is undisputed that DOT maintains a right-of-way within the estate to access I — 10; and it is also undisputed that a portion of the estate has been conveyed to Santa Rosa County to maintain a county road. Therefore, DOT’S use of part of its estate is sufficient to apply the exception. See Water Control Dist. of S. Brevard v. Davidson, 638 So.2d 521, 526 (Fla. 5th DCA 1994) (“Rights or easements acquired for the use and benefit of the public are not easily lost or surrendered, and MRTA should be broadly construed to protect these rights to the extent possible under the law.”) (citing Horn, 496 So.2d at 204); see also Horn, 496 So.2d at 209 (holding that to demonstrate use, the parties must show “(1) use by the public, (2) the identity of the roadway, its location, width, length, and (3) that the use was adverse, in the sense that (for road purposes) it must be inconsistent with the owner’s use and enjoyment of his own lands, and not a permissive use”).
Therefore, in accordance with existing caselaw, DOT has established its entitlement to the exception provided in section 712.03(5) for its entire fee estate. Accordingly, we quash the First District’s decision with instructions to remand to the trial court for issuance of an order denying Clipper Bay’s action to quiet title and awarding the disputed property to DOT.
Because we so find, we decline to address DOT’S remaining argument on review.
It is so ordered.
LABARGA, C.J., and PARIENTE, LEWIS, and QUINCE, JJ., concur.
CANADY, J., concurs in result with an opinion.
POLSTON, J., concurs in result.

. The MRTA defines “root of title” as:
any title transaction purporting to create or transfer the estate claimed by any person and which is the last title transaction to have been recorded at least 30 years prior to the time when marketability is being determined. The effective date of the root of title is the date on which it was recorded.
§ 712.01(2), Fla. Stat.

. A muniment of title is "documentary evidence of title, such as a deed or a judgment regarding the ownership of property.” Black's Law Dictionary 1114 (9th ed. 2009); see also H & F Land, Inc. v. Panama City-Bay Cnty. Airport & Indus. Dist., 736 So.2d 1167, 1173 n. 5 (Fla.1999), receded from by Blanton, 887 So.2d 1224 (holding that the MRTA does not apply to a valid claim to a statutory way of necessity).

. The lease conveys:
That part of:
Blocks 356, 357, 358, 359, 360, 361, 362, 363, 364, 365, 366, 367, and 368 of Avalon Beach Subdivision as per plat recorded in Plat Book “A", Pages 1 thru [sic] 10, of the Public Records of Santa Rosa County, Florida. Also, the unsubdivided area lying West of said Avalon Beach Subdivision in Section 5, Township 1 South, Range 29 West,
lying within the following described parking area and lying within 30.00 feet each side of the following described centerline: Commence at the intersection of the center-lines of San Juan Street (50 foot right of way) and 14th Avenue (50 foot right of way) of said Avalon Beach Subdivision; then go South 0°00'00" West along the centerline of 14th Avenue (50 foot right of way) a distance of 650.00 feet to the intersection of the centerline of 14th Avenue (50 foot right of way) and the centerline of San Pablo (50 foot right of way) for the POINT OF BEGINNING; thence continue South 0°00'00" West along the centerline of said 50.00 foot right of way for a distance of 946.00 feet to a point 30.00 feet North of the limited access fence on 1-10; thence North 89°54'47" West a distance of 3880.53 feet to the beginning of a curve, concave to the Northerly, having a radius of 1313.14 feet; thence run Northwesterly 601.26 feet along said curve thru [sic] a central angle of 21°52' 16" to the end of said curve; said point being the beginning of a curve, concave Southerly, having a radius of 305.17 feet; thence run Northwesterly, Westerly and Southwesterly 135.32 feet along said curve thru [sic] a central angle of 25°24'25" to the end of said curve; thence run Southwesterly, having a radius of 474.07 feet; thence run Southwesterly 290.48 feet along said curve thru [sic] a central angle of 35°06'26" to the end of curve and the end of centerline herein described and the POINT OF BEGINNING of a proposed parking area; thence North 23°00'09“ West 250.00 feet; thence South 66°59'51" West 230.00 feet along the water edge of Mulatto Bayou; thence South 22°00'09'' East 290.00 feet to the Limited Access fence of I — 10; thence North 73°59'61" East 236.83 feet along said fence; thence North 23°00'09" West 68.82 feet to the POINT OF BEGINNING of said proposed parking area.
Containing 7.91 acres, more or less, in the 50 foot right of way and 1.61 acres, more or less, in the parking area.