KELSEY, J.
Children’s Home Society of Florida, a licensed adoption agency, appeals a non-final order requiring it to conduct a diligent search for the putative father of a baby girl placed with the Society for adoption. We reverse, because on the facts of this case, the Society was not subject to any diligent search requirement beyond what it had already completed prior to the termination of parental rights hearing below.
The baby’s birth mother, who was single at all pertinent times, did not identify a putative father before giving the baby up for adoption. The Society asked for identification of the father several times, but the mother never identified a father. The mother signed a sworn statement that the identity of the father was unknown. She also signed a consent to entry of an order terminating parental rights including her own rights, again stating that the birth *921 father was unknown. No father was listed on the baby’s birth certificate. No father has filed a claim of paternity with the Office of Vital Statistics or otherwise asserted or acknowledged paternity. The Society duly conducted a diligent search of the Florida Putative Father Registry and obtained a certificate that there was no filing pertinent to the father of this baby.
The Society placed the baby with prospective adoptive parents, and filed a petition for termination of parental rights and permanent, commitment for adoption. Five months later, at.the hearing set as the final hearing to terminate parental rights and finalize adoption, the trial court sua sponte asked the Society for the birth mother’s phone number, then proceeded in open court to call the mother at her place of employment. The trial court asked the birth mother about the validity of her consent to the adoption, and further asked the birth mother to identify the father. The birth mother identified one possible father by his first name and that he worked at an unspecified car dealership. Mid-questioning, the trial court contacted an attorney to come into the courtroom and represent the mother. The mother expressed to this attorney a concern with her .privacy, rights. The trial court again questioned the mother about who might be the father, and the birth mother suggested another man by first name and that he worked at an unspecified home-improvement store, but gave .no other information about either man or any other who might be the father. Counsel for the mother again asserted .the mother’s privacy interests.
The trial court then entered the order under review, requiring the Society to conduct a diligent search to locate these two men known only by their first names and possible unspecified places of past employment in a panhandle city. The Society appealed; the order was stayed pending this appeal; and after granting the stay, the trial court sua sponte appointed an attorney to- represent the interests of the unknown father. -Because this order is in the nature of a mandatory injunction, we have jurisdiction. See Fla. R.App. P. 9.130(a)(8)(B). ' The questions presented involve statutory interpretation, reviewed de novo. Fla. Dep’t of Transp. v. Clipper Bay Invs., LLC, 160 So.3d 858, 862 (Fla.2015).
The trial court erred in interpreting the governing statute, section 63.062(3) of the Florida Statutes, which provides in pertinent part as follows:
[A]n adoption éntity shall serve'a notice of intended adoption plan upon any known and locatable unmarried biological father who is identified to the adoption entity by the mother by the date she signs her consent for adoption if the child is 6 months of age or less at the time the consent is executed. Service of the notice of intended adoption plan is not required when the unmarried biological father signs a consent for adoption -or an affidavit of nonpaternity or when the child is more than 6 months of age at the time of the execution of the consent by the mother.
[[Image here]]
(b) If the mother identifies a potential unmarried biological father within the timeframes required by the státute, whose location is unknown, the adoption entity shall conduct a diligent search pursuant to s. 63.088.,
§ 63.062(3), (3)(b), Fla. Stat. (2015) (emphasis added). Under the clear and unambiguous provisions of the statute, the adoption- agency is not required to serve a notice of intended adoption plan on a putative father unless the mother has first identified a “known and locatable unmarried biological father ... by the date she signs her consent for adoption.” Id. at *922 § 63.062(3). Likewise, the statute does not require the agency to conduct a diligent search for the putative father unless the mother has identified a potential father “within the timeframes required-by the statute.” Id. - at § 63.062(3)(b). The “timeframes required by the statute” are consistently identified as the date the mother signs the consent for adoption. Id. at §§ 63.064(1) (governing actions required of an unmarried biological father to establish parental rights); 63.062(3) (concerning mother’s identification of knQwn and beatable unmarried biological fathers); 63.088(1), (4) (governing notice to unmarried biological father and inquiry by the court).
In this case, no putative father was known, or beatable, or identified, by the time the birth mother signed her consent for adoption. Although that is the only time frame relevant under the statute, it is also.true that the limited information the birth mother provided later, under questioning from the trial court, likewise did not identify a known or beatable- putative father. To the extent the trial court relied on Heart of Adoptions, Inc. v. J.A., 963 So.2d 189 (Fla.2007), such reliance was error because the Florida-Legislature substantially amended the relevant provisions of the,adoption statutes after rendition of that .decision. The Society did all it was required to do.
’- The trial court’s sua sponte questioning of the birth mother five months after she had consented to termination of parental rights and to the baby’s adoption, and had sworn at least twice that the birth father-was unknown, was a violation of the mother’s privacy rights under Chapter 63 of the Florida Statutes. See § 63.088(4), Fla. Stat. (2016) (authorizing court inquiry only as to the identity of potential biological fathers identified to the adoption agency “before the date [the mother] signed the consent for adoption”); id. § 63.022 (reciting unmarried birth mother’s right to privacy in making decisions about her future and the future of the child); id. § 63.063(2) (finding that “the interests of the state, the mother, the child, and the adoptive parents ... outweigh the interest of an unmarried biological father who does not take action in a timely manner”).
Further, the adoption statute places time limits on an unmarried biological father’s assertion of parental rights. An adoption agency is not required to serve notice of an intended adoption plan if a child is more than six months old when the mother executes consent for adoption. § 63.062(3), Fla. Stat. (2106). A biological father who is not identified by the mother by the time she consents to adoption, but who wishes to preserve the right to notice and consent, must register with the Florida Putative Father Registry by the date a petition for termination of parental rights is filed. § 63.054(1), Fla. Stat. (2105). No putative father did so here'. No putative father had standing here.' Under section 63:089, “[a]n unmarried biological father does not have standing to seek relief from a judgment terminating parental rights if the mother did not identify him to the adoption entity before the date she signed a consent for adoption 'or if he was not located because the mother failed or refused to provide sufficient information to locate him.” § 63.089, Fla. Stat. (2015); see also id. § 63.022 (providing that unmarried biological father’s interests “acquire[ ] constitutional protection only when he detoon-strates a timely and full commitment to the responsibilities - of parenthood, both during the pregnancy and after the child’s birth”); Lehr v. Robertson, 463 U.S. 248, 261, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983) (recognizing that “the mere existence of a biological link” does not confer legal rights without the father’s “full commitment to *923 the responsibilities of parenthood”). Even assuming, without deciding, that the trial court had the authority to appoint an attorney for an unknown father after the filing of a notice of appeal, we reject that attorney’s arguments.
Accordingly, we reverse the trial court’s order and remand for the prompt entry of a final order terminating parental rights to this baby and a prompt ruling on the petition for permanent commitment for adoption.
REVERSED and REMANDED.
WOLF and WETHERELL, JJ., concur.